J-S11045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIFFANY LYNN EVANS | : | |
| | : | |
| Appellant | : | No. 838 WDA 2020 |

Appeal from the Judgment of Sentence Entered July 10, 2020
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001344-2019

BEFORE: STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: APRIL 30, 2021**

Appellant, Tiffany Lynn Evans, appeals from the judgment of sentence imposed following her convictions of conspiracy to commit theft of moveable property by unlawful taking or disposition and receiving stolen property.[1] We affirm.

On May 23, 2019, David Millero and Appellant were at a McDonald's restaurant in Connellsville, Fayette County when Millero noticed an older man with a large amount of cash in his wallet. Millero informed Appellant of what he saw and the two followed the man, later identified as John Welsh, to his home in Connellsville with Millero driving. Upon arriving at Welsh's house, Millero approached Welsh and acted as if he was lost, asking to use Welsh's

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 903 and 3925(a), respectively.

phone. When Welsh said he could not help Millero and walked back towards his house, Millero struck Welsh from behind and took his wallet, which contained approximately $260 in cash. Millero and Appellant escaped and later in the day spent the stolen money on crack cocaine, which they then used.

Police obtained security footage from one of Welsh's neighbors and subsequently discovered that the vehicle in the footage was owned by Appellant. Appellant and Millero were each charged, and Appellant proceeded to trial while Millero entered a guilty plea to robbery and other charges. On July 6, 2020, the jury convicted Appellant of the above-stated offenses. On July 10, 2020, the trial court sentenced Appellant to a term of imprisonment of 12 to 24 months on the receiving stolen property charge and no further penalty on the conspiracy charge. Appellant filed a timely post-sentence motion, raising, *inter alia*, a weight-of-the-evidence claim. The trial court denied the post-sentence motion on July 24, 2020. Appellant thereafter filed a timely notice of appeal.[2]

Appellant raises the following issues for our review:

[1.] Whether the evidence presented at trial was legally and factually sufficient to prove that the Appellant committed the offense of conspiracy to commit theft by unlawful taking when there was no evidence presented that the Appellant ever entered into an agreement with her co-defendant to commit a theft, and

---

[2] Appellant filed her concise statement of errors on September 18, 2020, and the trial court entered an opinion on October 30, 2020.

there was no evidence presented that the Appellant shared the criminal intent with her co-defendant to commit the offense.

[2.] Whether the evidence presented at trial was legally and factually sufficient to prove that the Appellant committed the offense of receiving stolen property when there was no evidence presented that the Appellant ever took possession, received, retained, or disposed of the stolen items; specifically, $260 in cash and a wallet.

[3.] In the alternative, whether the verdicts of guilty in this matter were against the weight of the evidence, and so contrary to the evidence and testimony presented at trial, as to shock one's sense of justice.

Appellant's Brief at 4 (unnecessary capitalization and suggested answers omitted).

In her first two issues, Appellant challenges the sufficiency of the evidence as to both her convictions. A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. **Commonwealth v. Smith**, 234 A.3d 576, 581 (Pa. 2020). When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. **Id.** "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Commonwealth v. Wallace**, 244 A.3d 1261, 1274 (Pa. Super. 2021) (citation omitted). "It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." **Commonwealth v. Hill**,

210 A.3d 1104, 1112 (Pa. Super. 2019). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Wallace**, 244 A.3d at 1274 (citation omitted). As an appellate court, "we may not weigh the evidence and substitute our judgment for that of the fact-finder." **Id.** (citation omitted).

We first address the sufficiency of the evidence with respect to Appellant's conviction of conspiracy to commit theft of moveable property by unlawful taking or disposition. An individual is guilty of the underlying offense if she "unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). To sustain a conviction for criminal conspiracy, "the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. Fisher**, 80 A.3d 1186, 1190–91 (Pa. 2013) (citation omitted). The defendant need not commit the required overt act herself, but, instead, it may be committed by a co-conspirator. 18 Pa.C.S. § 903(e); **Commonwealth v. Reed**, 216 A.3d 1114, 1122 (Pa. Super. 2019).

It is well-established that "[m]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient." **Commonwealth v. Holston**, 211 A.3d 1264, 1278 (Pa. Super. 2019) (*en banc*). "Rather, the Commonwealth must prove that the defendant shared the criminal intent, i.e., that the [a]ppellant was an active participant in the

criminal enterprise and that he had knowledge of the conspiratorial agreement." *Id.* (citation and quotation marks omitted). "The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished." ***Commonwealth v. Gross***, 232 A.3d 819, 839 (Pa. Super. 2020) (*en banc*) (citation omitted). "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." ***Id.*** (citation omitted).

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

***Holston***, 211 A.3d at 1278 (citation omitted).

Appellant argues that there was insufficient evidence to show that she shared a criminal intent with Millero or that she entered into a criminal agreement with him. Appellant contends that "Millero made the decision himself to get the money from the victim" and Appellant did not offer any words of encouragement or direction to Millero nor did she take any overt actions to further the theft. Appellant's Brief at 9. Appellant asserts that the evidence merely shows that she was present at the scene and partook in the

drugs Millero purchased with the stolen money, but there is no evidence that she actively participated in the theft of the victim's money.

At trial, Welsh testified that he withdrew $260 from an ATM and proceeded to a McDonald's restaurant three miles from his house where he ordered a coffee. N.T., 7/6/20, at 22-24. When he arrived home, he saw a dark-colored Chevrolet turning around in front of his house. *Id.* at 24. A man exited the car, called to Welsh, and asked to use Welsh's cell phone. *Id.* at 24-25. Welsh refused the request, turned around, and walked back toward his house. *Id.* at 25. As he was on the steps of his house, he was hit in the back of his head and quickly realized that his wallet had been stolen. *Id.* at 25-26. Welsh chased after the man, but the man was able to reach the car first and drive away. *Id.* at 26. Welsh saw a woman in the passenger seat of the Chevrolet, but she did not get out of the vehicle or say anything to him. *Id.* at 25, 27-28.

After Appellant's vehicle, a dark blue Chevrolet Malibu, was determined from surveillance video to have been at Welsh's house at the time of the incident, Appellant and Millero were taken into custody by the Pennsylvania State Police. *Id.* at 33-36, 49-52. In Appellant's interview with Troopers James Garlick and Nicole Sigwalt conducted on the day following the incident, Appellant at first denied being present at the scene, stating that Millero had dropped her off down the road before approaching Welsh's house. *Id.* at 38, 53-54. However, after the Troopers informed Appellant that they had

surveillance video showing her in the vehicle as it drove away from Welsh's house, Appellant began to cry hysterically. *Id.* at 54.

Trooper Sigwalt testified that Appellant then explained during the interview that when they were at the McDonald's, Millero returned to the car informing Appellant that he saw a man with "stacks of cash" and they then followed him. *Id.* at 54. After they followed Welsh to his house, Millero exited the car, took Welsh's wallet, and they fled from the scene. *Id.* Appellant then told the Troopers that as they were driving away, Millero removed the money from Welsh's wallet and threw it out the window. *Id.* at 55. Appellant stated that she and Millero then purchased crack cocaine in Uniontown City with Welsh's money and they smoked the crack cocaine that evening. *Id.* On cross-examination, Trooper Sigwalt testified that Appellant stated during the interview that "we" purchased the drugs and then "he purchased more [drugs] later." *Id.* at 63.

Appellant's interview was video recorded, and relevant portions were played to the jury. *Id.* at 55-57; Commonwealth Exhibit 2. Appellant also provided a written statement to the troopers, which was admitted into evidence and read to the jury by Trooper Sigwalt. Commonwealth Exhibit 3. In her statement, Appellant wrote that when they were at the McDonald's she saw "an older man in a light blue Buick parked" near her car. N.T., 7/6/20, at 58-59. According to the statement, "Millero came running out to our car and said Tif, we're following him [because he had] two stacks of money in his wallet. So we followed him to his house." *Id.* at 59. After Millero took Welsh's

wallet and they drove away, Appellant stated that Millero "then drove us to Millview Street in Uniontown where we got drugs." *Id.*

Millero testified for the defense that he alone made the decision to follow Welsh home and take his wallet while Appellant "had no clue what I was doing" and no involvement in the planning of the theft. *Id.* at 80-82, 85-86. Millero stated that he purchased drugs with the $260 taken from Welsh's wallet and considered the money to be his. *Id.* at 82-83. He testified that Appellant, with whom he was in a romantic relationship at the time of the incident, "never touched a dollar of" the money and she had nothing to do with the purchases of drugs. *Id.* at 82-83, 86-87. According to Millero, Appellant was "hysterical the whole time" and "scared to death." *Id.* at 83.

We conclude that the evidence was sufficient to convict Appellant of conspiracy to commit theft of moveable property by unlawful taking or disposition. Initially, it is clear that an overt act was done in furtherance of the conspiracy as Millero consummated the crime of theft by unlawful taking or disposition when he approached Welsh from behind, struck him, and took his wallet without permission. While Appellant was not involved in the commission of the offense, this fact is irrelevant as the overt act may be accomplished by a co-conspirator. *Reed*, 216 A.3d at 1122.

In addition, while no direct evidence was presented showing a conspiratorial agreement or a shared criminal intent, there was ample circumstantial evidence by which the jury could have reasonably inferred that Appellant entered into a conspiracy with Millero. Appellant was present when

Millero announced at McDonald's that Welsh had a large amount of cash on him and he intended to follow him, and she was with Millero during the theft and afterwards when they spent the cash taken from Welsh on drugs and then used the drugs. While Appellant was not driving the Chevrolet during the events at issue, she was the owner of that vehicle and in a romantic relationship with Millero at the time of the incident. Despite their relationship, Appellant did nothing to stop Millero from his actions and in fact she stayed in his presence during the criminal act and afterwards when they used the proceeds of the theft on drugs. Appellant also did not report Millero's actions to authorities, and instead she initially falsely told Troopers that she was not present at Welsh's house.

Viewing this evidence in the light most favorable to the Commonwealth, this jury was free to find that Appellant entered into a criminal agreement with Millero and shared his criminal intent to take Welsh's money. Appellant's conspiracy conviction thus rests on sufficient evidence, and Appellant's first issue merits no relief.

Next, Appellant argues that there was insufficient evidence to support her conviction of receiving stolen property as the Commonwealth did not show that Appellant ever received or handled the cash stolen from Mr. Welsh. The receiving stolen property offense is defined by statute as follows:

> (a) Offense defined.--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

(b) Definition.--As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S. § 3925. Therefore, the Commonwealth must prove three elements to substantiate a receiving stolen property conviction: "(1) intentionally acquiring possession, control or title, retaining, disposing, or lending on the security of movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) intent to deprive permanently." **Commonwealth v. Nero**, 58 A.3d 802, 807 (Pa. Super. 2012) (citation omitted). Appellant only challenges the evidence with respect to the first of these elements.

The Commonwealth may prove the receipt element of the receiving stolen property offense by demonstrating that the defendant exercised joint or constructive possession of the property. **Commonwealth v. Grekis**, 601 A.2d 1275, 1280-81 (Pa. Super. 1992); **Commonwealth v. Brady**, 560 A.2d 802, 806 (Pa. Super. 1989). Constructive possession is a legal fiction used to prove the element of possession of a prohibited item where the defendant was not in physical possession of the item. **Commonwealth v. Peters**, 218 A.3d 1206, 1209 (Pa. 2019). "Mere presence or proximity to the contraband is not enough." **Id.** Rather, "[t]he evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it." **Id.** In other words, the defendant must have had "the ability to reduce the item to actual possession immediately or was otherwise able to govern its use or disposition as if in

- 10 -

physical possession." *Id.* (citation omitted). Constructive possession may also be found where two or more actors have "joint control and equal access" to the item at issue. *Commonwealth v. Dix*, 207 A.3d 383, 390 (Pa. Super. 2019) (citation omitted); *see also Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996) ("The fact that another person may also have control and access does not eliminate the defendant's constructive possession; two actors may have joint control and equal access and thus both may constructively possess the contraband.").

Constructive possession "is an inference arising from a set of facts that possession of the contraband was more likely than not" and "may be established by the totality of the circumstances." *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted). As with any other element of a crime, constructive possession may be proven by circumstantial evidence that allows the trier of fact to reasonably infer that the defendant exercised dominion and control over the contraband at issue. *Commonwealth v. Parrish*, 191 A.3d 31, 36-37 (Pa. Super. 2018).

In this case, there was no evidence that Appellant ever handled the approximately $260 of stolen property. However, Appellant's oral and written statements to the Pennsylvania State Police indicate that she and Millero jointly exchanged the cash for crack cocaine, which she and Millero then together used. *See* N.T., 7/6/20, at 59 ("[Millero] then drove us to Millview Street in Uniontown where **we** got drugs."), 63 ("[Appellant] said, **we** purchased [drugs] and then in her interview she said, he purchased more

later.") (emphasis added). Along with the circumstantial evidence regarding Appellant's participation in the conspiracy to take Welsh's wallet, including her presence at each stage of the crime and her knowledge and tacit assent to the plan, this evidence was sufficient to prove that Appellant was not "[m]ere[ly] presen[t] or proxim[ate]" to the stolen property, **Peters**, 218 A.3d at 1209, but that she acquired joint constructive possession over the stolen property at the time it was used to purchase the crack cocaine. Appellant's second appellate issue thus fails.

Lastly, Appellant argues that the convictions for both the conspiracy and receiving stolen property charges were against the weight of the evidence. Appellant contends that the evidence showed that Millero alone planned the crime, confronted the victim and took his money, and retained the money from Welsh's wallet after the crime was completed. According to Appellant, the overwhelming balance of evidence demonstrates that her only role in the events was as a passive bystander to the theft and a user of the drugs that Millero purchased with the stolen cash. Appellant argues that the jury's verdict was so against the weight of the evidence that it shocks the conscience and she therefore is entitled to a new trial.

We are guided by the following principles when reviewing a claim that the verdict is against the weight of the evidence. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses." **Commonwealth v. Clemens**, 242 A.3d 659, 667 (Pa. Super. 2020) (citation omitted). A

verdict will only be reversed as against the weight of the evidence where the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Akhmedov***, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted). The fact-finder is charged with the responsibility to resolve contradictory testimony and questions of credibility, and we may not substitute our judgment in place of the fact-finder. ***Commonwealth v. Cramer***, 195 A.3d 594, 600 (Pa. Super. 2018).

A motion for a new trial based on a weight-of-the-evidence claim is addressed to the discretion of the trial court, and therefore we review only the lower court's exercise of discretion and not the underlying question of whether the verdict is against the weight of the evidence. ***Wallace***, 244 A.3d at 1276. When reviewing a trial court's determination on a weight claim, we give the "gravest consideration to the findings and reasons advanced by the trial judge" because it is the trial judge, not the appellate court, that had the opportunity to see and hear the evidence presented. ***Id.*** (citation omitted).

In analyzing Appellant's weight-of-the-evidence claim, the trial court stated:

> Here, the evidence at trial was that the same night after the robbery of the victim, [Appellant] participated in using drugs that she knew were purchased with money from the robbery. This Court does not find the subsequent verdict of guilty for conspiracy to commit theft and receiving stolen property to shock one's sense of justice.

Order, 7/24/20; ***see also*** Trial Court Opinion, 10/30/20, at 10.

- 13 -

Upon review, we discern no abuse of discretion in the trial court's determination that the verdict was not against the weight of the evidence. We agree with the trial court that the evidence was not "so tenuous, vague and uncertain that the verdict shocks the conscience of the court," but rather firmly establishes her role in the theft of Welsh's wallet, as well as the subsequent purchase of drugs with the stolen money and use of the drugs. **Akhmedov**, 216 A.3d at 326 (citation omitted). While Millero testified that Appellant had no knowledge that he intended to take Welsh's wallet by force and no role in the disposition of the stolen funds, the question of whether to accept as credible Millero's account was squarely within the jury's authority as fact-finder. **Cramer**, 195 A.3d at 600. Appellant is therefore entitled to no relief on his weight-of-the-evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/2021