J-S30018-20

2020 PA Super 261

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JEFFREY LYNN CLEMENS :
:
Appellant : No. 1668 WDA 2019

Appeal from the Judgment of Sentence Entered May 9, 2019
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000461-2018

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY McLAUGHLIN, J.:                     FILED OCTOBER 28, 2020

Jeffrey Lynn Clemens appeals from the judgment of sentence entered following his jury trial conviction for Resisting Arrest and bench trial convictions for Driving Under the Influence of Alcohol ("DUI")-General Impairment, Careless Driving, and Restrictions on Alcoholic Beverages.[1] Clemens challenges the sufficiency and weight of the evidence. We affirm.

Clemens was charged with the above-referenced offenses after he struck a light pole with his car. The court held a trial, where the parties presented the following evidence.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 5104, 75 Pa.C.S.A. §§ 3802(a)(1), 3714(a), and 3809(a), respectively.

In December 2017, Tina Dobson, an employee of a truck stop, learned that someone had driven into a light pole outside the truck stop. N.T., 3/21/19, at 13-14. She went outside and spoke to the driver of the vehicle, which was Clemens. Id. at 13-15. Clemens told her he struck the light pole about ten to 15 minutes before she came out. Id. Dobson stated that she smelled alcohol on Clemens, he was repeating himself, and he "wasn't real steady on his feet and he had claimed that he was going to wait about an hour and then he was going to continue to drive to Cleveland." Id. at 14, 18. Dobson testified that she observed the light pole and damage to the front end and headlight of Clemens' vehicle. Id. at 14. Dobson called the Pennsylvania State Troopers and explained what happened. Id. at 15.

On cross-examination, Dobson stated that Clemens also informed her that the defrosters on his vehicle were not functioning and the windows had "fogged up" prior to the accident. Id. at 18-19. She observed that the windows on the vehicle were fogged. Id.

Trooper Dylan Weaver testified that he arrived at the truck stop in a marked police vehicle and in uniform. Id. at 24-25. He approached Clemens and his vehicle, which had front-end damage. Id. at 25. He said the light pole was clearly marked, as the base was a bright yellow, and Clemens' keys were on the dashboard, not in the ignition. Id. at 26-27. The Trooper said he detected a "very, very strong odor of alcohol beverage emanating off [Clemens'] person." Id. Clemens repeated himself multiple times, stating he had made a left turn into the truck stop and crashed into "that yellow thing,"

and he had gotten off the interstate because his defrosters were not working. Id. Trooper Weaver stated Clemens was hesitant to tell him what happened. Id.

According to the Trooper, after Clemens admitted to being behind the wheel and in physical control of the vehicle, Trooper Weaver confronted him about the smell of alcohol. Id. Clemens stated he had not been drinking. Id. Trooper Weaver saw on the passenger seat a cooler with the lid partially off, and the top of a blue and red aluminum can. Id. at 29. The can was a 25 ounce can of Natty Daddy, which is an eight percent by volume alcoholic beverage. Id. The can was a little less than a quarter full. Id. at 30.

Trooper Weaver offered Clemens the opportunity to perform field sobriety tests. Id. Clemens "hum[med]-and-haw[ed] around about it, telling [Trooper] Weaver that [he] didn't have cause to request him to leave his car." Id. Trooper Weaver stated that Clemens took "quite a while" to find the insurance card and later forgot that he had handed Trooper Weaver his identification. Id. at 30-31. Trooper Weaver testified that in his opinion, Clemens "was too impaired to drive." Id. at 33.

Trooper Weaver asked Clemens to get out of the vehicle, but Clemens did not comply. Id. at 34. Trooper Weaver provided multiple opportunities to exit, but Clemens told Trooper Weaver that he did not "have cause to pull [him] out of the vehicle." Id. Trooper Weaver called for assistance, and Corporal Todd Koebley arrived. Id. at 35. Trooper Weaver again asked

Clemens if he would perform field sobriety tests, and Clemens said he would not. Id.

Trooper Weaver and Corporal Koebley then gave Clemens several commands to exit the vehicle, but Clemens remained inside. Id. Trooper Weaver stated, "We continued to interact with him and it was clear that he wasn't going to come out of the vehicle based on our verbal commands. At that point I grabbed his arm and began to try to physically remove him from the vehicle. He grabbed the steering wheel and resisted me. . . ." Id. It took both Trooper Weaver and Corporal Koebley pulling on Clemens to get him out of the vehicle. Id. After Trooper Weaver warned Clemens that if he did not get out, they would tase him, Clemens remained in the vehicle and Corporal Koebley tased him in the right thigh. Id. at 36. Clemens then finally got out of the vehicle, and Trooper Weaver put Clemens' arm behind his back. Id. He gave commands for Clemens to put his hands behind his neck, but Clemens did not cooperate. Id. Trooper Weaver and Corporal Koebley eventually were able to take Clemens into custody. Id. at 37.[2]

Trooper Weaver then asked Clemens to submit to a breath testing, and Clemens said, "No." Id. at 39-40. Trooper Weaver read Clemens the DL-26 form, which contains the implied consent warnings. Trooper Weaver also gave it to Clemens to read, and Clemens signed the form acknowledging he read it.

_____

[2] The jury saw the motor vehicle recording, which Trooper Weaver stated was a fair and accurate depiction of what occurred that night. N.T., 3/21/19, at 38.

- 4 -

Id. at 39. One of the warnings on the form stated that if he refused, Clemens' license would automatically be suspended for 12 months. Id. at 40.

On cross-examination, Trooper Weaver stated that, until Clemens was in handcuffs, Trooper Weaver never "said out loud you're under arrest." Id. at 42. He stated that "a reasonable person when state police are continually pulling on you, telling you to get out, grabbing you, okay, a taser is used on your person to get you to exit the vehicle, your hands are being taken and tried to be placed behind your back, you are given commands to put your hands behind your back, you are taken to the ground because you continue to resist arrest. You don't initially resist and then comply, you continue to resist arrest, okay. He understood he was under arrest." Id. at 43.

Further, on cross-examination, Trooper Weaver stated he did not notice any slurred speech or anything unusual about Clemens' eyes, and that Clemens said he had just purchased the vehicle that day and was having trouble locating the paperwork. Id. at 46-49.

Corporal Koebley also testified and said that he responded to Trooper Weaver's request for back up. He testified that he and Trooper Weaver attempted to "wrestle" Clemens out of the car, and "he was resisting heavily." Id. at 53. According to Corporal Koebley, Clemens held onto the steering wheel, locked himself into position with his feet, and refused to exit, despite the troopers' commands. Id. at 53-54. He also stated that they warned Clemens that Corporal Koebley would use the taser if Clemens did not comply, and when Clemens did not comply, Corporal Koebley used the taser on him.

Id. Clemens immediately got out of the vehicle, and troopers "[u]ltimately . . . took him to the ground and forcibly handcuffed him." Id. at 55. Corporal Koebley also testified that he observed signs of intoxication on Clemens, including a "[s]trong odor of alcohol, difficulty standing, repeating himself." Id. at 56.

The jury convicted Clemens of Resisting Arrest and the trial court found him guilty of DUI-General Impairment. The court stated it based the DUI conviction "on the observations of the employee, the observations of both state police troopers, the alcohol found in his car, the fact that he did hit the pole, the refusal of the breath and blood and the field tests, as well as his behaviors seen on the video." Id. at 95. The court also found him guilty of the summary offenses of Careless Driving and Restrictions on Alcoholic Beverages.

The trial court sentenced Clemens to six months' restrictive intermediate punishment for the DUI conviction, one year of probation and 25 hours' community service for the Resisting Arrest conviction, and 25 hours' community service for the Restrictions on Alcoholic Beverages conviction.

Clemens' counsel filed a motion to withdraw, which the trial court granted. Clemens filed a pro se motion for a new trial, which the trial court denied. Clemens filed a notice of appeal. Clemens requested the appointment of counsel, and we remanded to the trial court, which appointed new counsel.

Clemens raises the following issues:

1. Whether the evidence was insufficient to support the guilty verdict of DUI General Impairment as Pennsylvania State Police Officers Weaver and Koebley did not witness [Clemens] operating his vehicle, and testified only to the detection of the odor of alcohol around [Clemens] on the date of his arrest and an open container to support the Commonwealth's case.

2. Whether the evidence was insufficient to support the guilty verdict of Resisting Arrest where Pennsylvania State Police Officers Weaver and Koebley did not notify [Clemens] that he was under arrest prior to the Officers attempting to forcibly remove [Clemens] from his vehicle on the date of his arrest.

3. Whether the finding of guilt for DUI General Impairment was against the weight of the evidence where Pennsylvania State Police Officers Weaver and Koebley did not witness [Clemens] operating his vehicle, and testified only to the detection of the odor of alcohol around [Clemens] on the date of his arrest and an open container to support the Commonwealth's case.

4. Whether the finding of guilt for Resisting Arrest was against the weight of the evidence where Pennsylvania State Police Officers Weaver and Koebley did not notify [Clemens] that he was under arrest prior to the Officers attempting to forcibly remove [Clemens] from his vehicle on the date of his arrest.

Clemens' Br. at 6.

In the first two issues, Clemens challenges the sufficiency of the evidence. When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." Commonwealth v. Feliciano, 67 A.3d 19, 23 (Pa.Super. 2013) (en banc) (citation omitted). "Where there is sufficient evidence to enable the trier

of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." Id. (quoting Stokes, 38 A.3d at 853). This standard applies equally where the Commonwealth's evidence is circumstantial. Commonwealth v. Patterson, 180 A.3d 1217, 1229 (Pa.Super. 2018).

In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder. See Commonwealth v. Snyder, 870 A.2d 336, 350 (Pa.Super. 2005). Additionally, the Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a reasonable doubt. Id. The fact-finder is free to believe all, part, or none of the evidence. Id.; Commonwealth v. Mollett, 5 A.3d 291, 313 (Pa.Super. 2010).

Clemens claims the Commonwealth failed to present sufficient evidence to sustain the DUI conviction. He argues that no witness saw him driving. Further, he notes that although the troopers smelled alcohol, Trooper Weaver acknowledged Clemens did not exhibit slurred speech or have glassy, bloodshot eyes. He argues that he was driving a new vehicle in which the defroster was not working, and that the odor of alcohol and a single can of an alcoholic beverage do not support the conviction.

The crime of DUI-General Impairment provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical

control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1). The Commonwealth must establish that the defendant (1) was operating a motor vehicle (2) after imbibing a sufficient amount of alcohol such that he was rendered incapable of safely operating the motor vehicle. Commonwealth v. Segida, 985 A.2d 871, 876 (Pa. 2009) (citing Commonwealth v. Kerry, 906 A.2d 1237, 1241 (Pa.Super. 2006)). To prove a person is incapable of driving safely, the Commonwealth must prove

> that alcohol has substantially impaired the normal mental and physical faculties required to operate the vehicle safely; substantial impairment means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. The meaning of substantial impairment is not limited to some extreme condition of disability. Section 3802(a)(1), like its predecessor, is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.

Kerry, 906 A.2d at 1241 (citations, quotation marks, and brackets omitted).

Clemens relies on Commonwealth v. Gause, 164 A.3d 532 (Pa.Super. 2017) (en banc), in support of his sufficiency claim. In Gause, a police officer initiated a stop of the car the defendant was driving because it lacked illuminated taillights. The defendant provided his license and registration without any fumbling. The officer smelled alcohol, and the defendant stated he had consumed one 12-ounce can of beer. The defendant also completed some field sobriety tests, "with varying levels of success," but informed the officers that he had been shot in the leg ten years before the stop. Id. at 535,

535 n.5. We concluded the evidence did not support a conviction under Section 3802(a)(1), noting that the defendant had "readily acknowledged" he had a beer about a half hour before the stop, was cooperative, did not exhibit typical indicators of alcohol impairment, and there was no evidence of erratic driving, slurred speech, or difficulty in handing over required documents or with standing. Id. at 541. We further noted that although the field sobriety tests yielded inconsistent results, the officer recognized the reliability of the tests could have been affected by the defendant's leg injury. Id.

Here, the Commonwealth presented sufficient evidence to support the conviction. Clemens told both Dobson and Trooper Weaver that he had driven his vehicle into the light pole. Unlike the defendant in Gause, Clemens had difficulty retrieving the requested paperwork, was not cooperative, and refused to perform field sobriety tests, and Dobson, who spoke with Clemens ten to 15 minutes after the accident, detected the smell of alcohol. Trooper Weaver also detected a strong odor of alcohol.

Moreover, there were indicia of intoxication to a degree that rendered Clemens unfit to drive safely. Trooper Weaver testified that Clemens was repeating himself, had trouble finding his documents, and refused to undergo field sobriety tests or a breath test. Trooper Weaver further found a 25-ounce can of 8% alcohol in the passenger seat that was only 25% full. Such evidence supports a finding, beyond a reasonable doubt, that Clemens was operating a motor vehicle after imbibing an amount of alcohol that made it unsafe for him to do so. See Kerry, 906 A.2d at 1241 (finding Commonwealth presented

sufficient evidence of impairment where defendant had 4 cans of alcohol on his person, he exhibited signs of intoxication, including bloodshot eyes, slurred speech, and odor of alcohol, and he refused to submit to breath test).

Clemens also challenges the sufficiency of the evidence to support the Resisting Arrest conviction. He argues the troopers never informed him he was under arrest and that he did not strike, or attempt to strike, the officers, or attempt to kick or push the officers.

The crime of Resisting Arrest occurs when a person "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, . . . creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104. "[A] valid charge of resisting arrest requires an underlying lawful arrest, which, in turn, requires that the arresting officer possess probable cause." Commonwealth v. Soto, 202 A.3d 80, 96 (Pa.Super. 2018) (quoting Commonwealth v. Hock, 728 A.2d 943, 946 (Pa. 1999)). "Section 5104 criminalizes two types of conduct intended to prevent a lawful arrest: the creation of a substantial risk of bodily injury to the officer or anyone else or means justifying or requiring a substantial force to overcome." Id. at 95.

In Commonwealth v. Thompson, this Court upheld the defendant's Resisting Arrest conviction where an officer had to struggle to pull the defendant away from her husband with whom she had interlocked her arms and legs. 922 A.2d 926, 928 (Pa.Super. 2007).The officer had commanded

- 11 -

her to put her hands behind her back, but she refused and held her arms tightly beneath her. Id. We concluded, despite the absence of evidence that she was fighting the officers, that the defendant's "passive resistance requiring substantial force to overcome provided sufficient evidence for upholding the resisting arrest conviction." Id.

Here, the officers had probable cause to arrest Clemens for DUI, as, among other things, he smelled of alcohol, there was an open container in his passenger seat, and he had struck a light pole. Regardless of whether the officers used the word "arrest," it would have been clear to a reasonable person that they ordered Clemens to get out of the vehicle, and attempted to extricate him from it, in an effort to effectuate an arrest. Further, both Trooper Weaver and Corporal Koebley testified to the extreme efforts required to remove Clemens from the vehicle, including the use of a taser. The evidence was sufficient to support the Resisting Arrest conviction. See Thompson, 922 A.2d at 928.

Clemens' remaining two issues challenge the weight of the evidence. He claims the DUI conviction was against the weight of the evidence, which he maintains merely showed that he was "simply experiencing difficulty in operating an unfamiliar vehicle with fogged-up windows." Clemens' Br. at 20. He claims the guilty verdict for Resisting Arrest also was against the weight of the evidence, as there was no testimony he struck, or attempted to strike, the officers or that the officers employed substantial force.

"When reviewing a challenge to the weight of the evidence, we review 'the trial court's exercise of discretion.'" Commonwealth v. Roane, 204 A.3d 998, 1001 (Pa.Super. 2019) (quoting Commonwealth v. Johnson, 192 A.3d 1149, 1152-53 (Pa.Super. 2018)). A trial court may sustain a weight challenge only if the verdict "'is so contrary to the evidence as to shock one's sense of justice.'" Id. (quoting Johnson, 192 A.3d at 1153). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." Id. (quoting Commonwealth v. Cramer, 195 A.3d 594, 600 (Pa.Super. 2018). We defer to the trial court's decision regarding a weight of the evidence claim because it "had the opportunity to hear and see the evidence presented." Id. (quoting Cramer 1925 A.3d at 600).

Here, the trial court found the verdict was not against the weight of the evidence. It reasoned that Clemens cross-examined three witnesses and "pointed out problems with the evidence," and stated that the issue of credibility was for the jury. Trial Court Opinion, Feb. 19, 2020, at 3. It found the evidence supported the verdict and the verdict did not "shock one's sense of justice." Id. at 3-4. This was not an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/28/2020</u>