J-A18020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JUSTIN HARPER | : | |
| Appellant | : | No. 1542 WDA 2021 |

Appeal from the Judgment of Sentence Entered November 30, 2021
In the Court of Common Pleas of Mercer County
Criminal Division at CP-43-CR-0000561-2021

BEFORE:  STABILE, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:                **FILED: SEPTEMBER 7, 2022**

Justin Harper (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of driving under the influence (DUI) of alcohol, 75 Pa.C.S.A. § 3802(a)(1) (general impairment).[1]  We affirm.

After conducting a non-jury trial on October 20, 2021, the court found Appellant guilty of DUI.  On November 30, 2021, the trial court sentenced Appellant, *inter alia*, to 30 days – 6 months of incarceration.[2]

---

[1] Prior to trial, the court dismissed the summary offenses of disregarding traffic lanes, 75 Pa.C.S.A. § 3309, and careless driving, 75 Pa.C.S.A. § 3714. After trial, the court found Appellant not guilty of DUI (high rate of alcohol), 75 Pa.C.S.A. § 3802(b).

[2] At sentencing, Appellant indicated he would be filing an appeal, and presented a motion for bond pending appeal.  **See** N.T., 11/30/21, at 9-10. The Commonwealth did not object and the trial court granted the motion.  **Id.**

It is undisputed that around midnight on November 20, 2019, Appellant called 911. Appellant stated he had "a few too many to drink," had fought with his girlfriend, and if police "could arrest [him] and put him in jail for the night, [Appellant] would be okay with that." *See* Trial Court Opinion, 2/9/22, at 2-3 (footnote citing trial transcript omitted). Appellant agrees the "evidence that was established after the non-jury trial is that Appellant himself called the police after an argument" with his girlfriend. Appellant's Brief at 16. Likewise, Appellant "does not dispute that he was intoxicated." *Id.*

Appellant argues the evidence was insufficient to support a finding that he **drove** while intoxicated. *Id.* at 16-17. He states, "no evidence was presented as to the time Appellant allegedly drove the vehicle and it can reasonably be inferred he drove the motor vehicle on the roadway in the morning, the day before, or the week before." *Id.* at 16. Appellant maintains he was in his home, and "this case has the potential to set dangerous precedent as to ingesting alcohol in your own home." *Id.*

The Commonwealth argues that although "Appellant was not directly seen driving on a public roadway while intoxicated, considering the totality of the circumstances, Appellant's culpability is and was clear." Commonwealth Brief at 2-3. The Commonwealth emphasizes, "the trial court was also the fact-finder, so not only did the lower court determine that a fact-finder *could* conclude sufficient evidence was presented, but in this case it *did*." *Id.* at 2 (italics in original).

In reviewing Appellant's sufficiency challenge, we view the evidence in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Neysmith*, 192 A.3d 184, 189 (Pa. Super. 2018). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). This standard applies equally where the Commonwealth's evidence is circumstantial. *Commonwealth v. Patterson*, 180 A.3d 1217, 1229 (Pa. Super. 2018).

We reiterated:

> In conducting [a sufficiency] analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder. *See Commonwealth v. Snyder*, 870 A.2d 336, 350 (Pa. Super. 2005). Additionally, the Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a reasonable doubt. *Id.* The fact-finder is free to believe all, part, or none of the evidence. *Id.*; *Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa. Super. 2010).

*Commonwealth v. Clemens*, 242 A.3d 659, 665 (Pa. Super. 2020).

Here, the trial court found Appellant guilty of DUI, general impairment, under 75 Pa.C.S.A. § 3802(a)(1). The general impairment subsection of the statute provides a person "may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle."

*Id.* Section 3802(a)(1) is an "at the time of driving" offense, *i.e.*, an offense requiring proof that the defendant was "driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol."

***Commonwealth v. Segida***, 985 A.2d 871, 875-76 (Pa. 2009).

Multiple types of evidence may prove DUI-general impairment. The Pennsylvania Supreme Court has explained:

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol[.]

*Id.* at 879.

At trial, the Commonwealth presented testimony from the two Pennsylvania State Police (PSP) officers who responded to Appellant's 911 call. Appellant presented testimony from his girlfriend, Ashley Kowal-Griffin. Notably, the trial court "found the testimony of the troopers credible." Trial

Court Opinion, 2/9/22, at 2. The court found Ms. Kowal-Griffin's testimony "credible only regarding certain statements against [Appellant's] interest, but generally not credible in all other important aspects." *Id.* (footnote omitted).

The first witness, PSP Trooper Travis Kauffman, testified to being dispatched to Appellant's home and arriving at 12:44 a.m. N.T., 10/20/21, at 21. Through Trooper Kauffman, the Commonwealth requested the admission of three exhibits: Exhibit 1 (the recording of Appellant's 911 call); Exhibit 2 (the written 911 call activity detail (CAD)); and Exhibit 3 (the Troopers' dash cam video (MVR) recorded at Appellant's residence). Appellant did not object and the trial court admitted the exhibits into evidence. When the Commonwealth played the dash cam video, Trooper Kauffman identified tire tracks "that went in [Appellant's] yard and then out on the road, with dirt from the edge of the road where his yard – that also went onto the lane of travel." N.T., 10/20/21, at 18. On cross-examination, Trooper Kauffman confirmed he saw "tire tracks leading to the roadway" and a damaged stop sign nearby. *Id.* at 20.

Trooper Kauffman also testified that Appellant admitted driving his vehicle in the yard. *Id.* at 22-23. Trooper Kauffman stated: "The physical evidence with the tire debris – or with the tire marks in the road, the dirt, and the debris from the back of his pickup truck indicated that he was on the roadway." *Id.* at 23. According to Trooper Kauffman, Appellant "said that he didn't realize he went on the road." *Id.*

Next, PSP Trooper Ethan Seckinger testified to working the midnight patrol with Trooper Kauffman when they were dispatched to Appellant's home for "a domestic." *Id.* at 30. Trooper Seckinger described "debris on the roadway, a street sign, and tracks leading from a yard into the roadway, and it brought debris, dirt, grass, and stones from the yard onto Route 173." *Id.* When Trooper Seckinger first saw Appellant, he was "picking up trash" in his yard. *Id.* at 35, 50. Trooper Seckinger testified:

> I could see clear tire tracks that were coming from the yard, just marks that the tires made in the grass onto the highway which brought dirt and grass and stones, like, debris from the lawn onto 173.
>
> ***
>
> They came from the yard across the road, and I don't believe the video showed it, but how you would drive on the road, on 173.
>
> ***
>
> There was a street sign in the roadway on the right side of the road. So – I forget what direction that would be, but the street sign was struck that was near his address where he left the lawn.

N.T., 10/20/21, at 31-32.

When Trooper Seckinger spoke with Appellant, Appellant admitted he "had six beers in the garage." *Id.* at 33. Appellant also admitted he drove his truck in his yard that evening. *Id.* at 34. Trooper Seckinger described Appellant's truck as "dirty," with "trash in the bed." *Id.* He observed the trash and debris "scattered all around the road." *Id.* Trooper Seckinger conducted field sobriety tests with Appellant and concluded Appellant was impaired. *Id.* at 37. The troopers then arrested Appellant based on their

belief that he had driven under the influence of alcohol. Trooper Seckinger testified that Appellant stated "something to the effect of I didn't know I went into the road." *Id.* Appellant's blood was drawn after his arrest. Trooper Seckinger read into the record the laboratory test results which indicated Appellant's blood alcohol content at 1:45 a.m. was .140. *Id.* at 43; *see also* Commonwealth Exhibit 5.

In response to questioning by the trial court, Trooper Seckinger testified that the tire tracks went from the yard "onto the road" about 25 yards. *Id.* at 46. The tracks "went right" to a stop sign that Trooper Seckinger observed "in the roadway when we arrived." *Id.* He continued: "The tracks showed him – where he would have struck the sign, and then the sign [laying] in the road." *Id.* at 46-47. On re-cross, Trooper Seckinger described the tracks as "fresh." *Id.* at 48.

Appellant's girlfriend, Ms. Kowal-Griffin, testified to arriving at the home between 9:30-10:00 p.m. that night. *Id.* at 56. She stated that Appellant appeared intoxicated, and the couple "argued for most of the evening." *Id.* at 57. Ms. Kowal-Griffin testified she never saw Appellant drive. *Id.* at 58. However, on cross-examination, she clarified she saw Appellant drive in the yard, but not on the road. *Id.* at 64. In response to questioning from the trial court, she testified that Appellant drove "from behind the house, and then drove around to the front of the house, and then where [he] parked." *Id.* at

64-65. Ms. Kowal-Griffin stated she did not see Appellant "on the road at all." *Id.* at 65.

On re-direct, Ms. Kowal-Griffin stated, "we always had tire tracks going through our yard." *Id.* She described Route 173 as "the main road in front of our house," which "always had dirt on it from the dirt road that we lived right next to." *Id.* at 59. In addition, she testified the sign "was knocked down two days prior." *Id.* at 60.

As noted, Appellant stipulated to a non-jury trial. The trial court, as the finder of fact, concluded there was "sufficient evidence [Appellant] operated his vehicle at the time he was intoxicated upon the roadway to meet the Commonwealth's burden of proof." Trial Court Opinion, 2/9/22, at 11. The court determined,

> [Appellant's] initial denial that he drove the vehicle, then subsequent admission that he drove only in the yard, followed by the statement that he did not realize he drove on the road, combined with the tire tracks which went from the yard onto the road, traveling essentially through the street sign, twenty-five (25) yards on the roadway, making a U-turn and ending at [Appellant's] vehicle, established [Appellant] was driving on a public road. The fact that the tracks on the roadway were undisturbed, [Appellant] was actively cleaning up the debris upon the troopers' arrival, and [Appellant's] paramour testifying to [him] being drunk prior to her arrival, [Appellant] not drinking since her arrival, and her denial then subsequent admission of [Appellant's] driving after she arrived, support a conviction with regard to 75 Pa.C.S.A. [§] 3802(a)(1).

Trial Court Opinion, 2/9/22, at 11. The court also noted:

> Although the toxicology report clearly established [Appellant's] blood alcohol level to be .140, the [c]ourt found [Appellant] not guilty [of DUI (high rate of alcohol).] The evidence is clear

- 8 -

[Appellant] operated his vehicle on a public roadway while under the influence of alcohol, but the exact time of the operation of said vehicle in relation to a specific blood alcohol content cannot be established beyond a reasonable doubt.

*Id.* at 11 n.27).

The trial court properly applied the law to its findings of fact. Accordingly, the Commonwealth presented sufficient evidence to demonstrate Appellant drove his vehicle while under the influence of alcohol and incapable of safe driving.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2022