J-A07030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DENZELL DOUGLAS :
:
Appellant : No. 1601 EDA 2022

Appeal from the Judgment of Sentence Entered January 31, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003409-2019

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JUNE 2, 2023**

Denzell Douglas appeals from the judgment of sentence entered following his convictions for knowing and intentional possession of a controlled substance and possession with intent to deliver ("PWID").[1] Douglas challenges the weight of the evidence. We affirm.

The Commonwealth presented evidence of the following at Douglas' bench trial. On February 1, 2019, while conducting narcotics surveillance, Officer Erick Crawford observed Douglas on the 4200 block of Ormond Street in Philadelphia. N.T., Trial, 11/15/21, at 20-21. During that day between the hours of 9:30 a.m. and 11:45 a.m., Officer Crawford observed Douglas approach the driver's side of three separate vehicles. *Id.* at 21-24. Each time Douglas approached the driver's side of the vehicle, Officer Crawford saw a

_____

[1] 35 P.S. §§ 780-113(a)(16) and (a)(30), respectively.

person extend their hand out of the window with money and saw Douglas take the money. *See id.* at 21, 22, 24. Officer Crawford observed Douglas hand over small items to the driver of the vehicle, after receiving money from the individuals in the first two vehicles. *Id.* at 22, 23. However, after receiving money from the driver of the third vehicle, Douglas "walked around to the rear of the car and then sat in the front passenger seat." *Id.* at 24-25. The vehicle drove away from the area and Officer Crawford had backup units follow the vehicle. *Id.* at 24, 25. Backup officers saw Douglas exit the vehicle and start walking back to the 4200 block of Ormond Street. *Id.* at 25. Officers later stopped the vehicle and recovered "six clear Ziploc packets of all blue [glassine] inserts in addition to just three blue [glassine] inserts, no clear packets" from the driver of the vehicle. *Id.* All the packets were stamped "2019." *Id.*

On February 6, Officer Crawford called a number ending in 6134 and placed an "order for $70 worth of heroin and $30 worth of crack cocaine." *Id.* at 26. Officer Crawford received the number from an anonymous source in the same area where he observed Douglas on February 1. *Id.* at 32. When he called the number, a male voice answered and agreed to provide the narcotics for the price of $100. *Id.* at 27. The male also told Officer Crawford to drive to the Texas Chicken and Burgers parking lot. *Id.* Officer Crawford drove to the location and Douglas approached the passenger side window of the vehicle. *Id.* at 28. Douglas handed Officer Crawford one bundle of heroin and

one clear baggie with packets of crack cocaine. *Id.*[2] The heroin packets "were all clear Ziploc packets with blue [glassine] inserts, all stamped 2019[.]" *Id.* Officer Crawford then left the area. *Id.* at 29.

A second officer, Officer Walter Bartle, observed the transaction between Douglas and Officer Crawford from his vehicle stationed in the same parking lot.[3] *Id.* at 47, 49. Officer Bartle saw Douglas approach the passenger's side of Officer Crawford's vehicle and "with a hand motion went into the passenger's window in Officer Crawford's vehicle." *Id.* at 50. Officer Bartle videorecorded the entire transaction. However, the Commonwealth did not introduce the video as evidence due to its failure to timely pass the video to defense counsel. *Id.* at 4, 47.

Police did not arrest Douglas following his encounter with Officer Crawford. Officer Crawford testified that the police arrested Douglas on February 22, while Officer Bartle testified that the police arrested him on February 11. *Id.* at 44, 51, 52-53. Upon arrest, officers did not recover prerecorded buy money, a cell phone, or narcotics from Douglas. *Id.* at 44.

---

[2] A bundle of heroin amounts to 14 packets. *See* N.T., Trial, at 28.

[3] Officer Bartle testified that he observed Officer Crawford and Douglas in the Texas Chicken and Burgers parking lot on February 26, 2019. *See* N.T., Trial, at 46. However, the Criminal Complaint states that the drug transaction occurred on February 11, similar to the testimony of Officer Crawford. *See* Criminal Complaint, dated 2/22/19.

Douglas testified in his defense, claiming that on February 6 he was at his friend's house which was near the area of Ormond Street but that he did not have any contact with officers or sell drugs that day. *Id.* at 58-61.

At the close of trial, the court concluded that the evidence showed that Douglas engaged in the drug transaction with Officer Crawford and found him guilty of PWID. The court made a negative inference based on the Commonwealth's late passing of the video. *Id.* at 71. The court nonetheless credited the officers' identification of Douglas. *Id.* It stated, "I don't have any doubt [that is] reasonable it was you in the parking lot of that chicken burger place." *Id.* at 73-74. The court found Douglas guilty of the above-referenced offenses and sentenced him to 11½ to 23 months' incarceration followed by 3 years of reporting probation. Douglas filed a post-sentence motion challenging the weight of the evidence, which the court denied. This appeal followed.

Douglas raises a single issue: "Did the lower court err and abuse its discretion when it denied [Douglas'] post-sentence motion for a new trial where the verdict was so against the weight of the evidence presented at trial as to shock the conscience?" Douglas' Br. at 3 (answer omitted).

Douglas claims that the trial court abused its discretion by denying his weight of the evidence claim. He maintains that the court erroneously relied on the testimony regarding the transaction with Officer Crawford that occurred in the parking lot. Douglas argues that the testimony "was so rife with uncertainty and contradiction that its use as the sole basis for [Douglas'] conviction shocks one's sense of justice." *Id.* at 14-15. He claims that the

evidence "supports the conclusion that [Douglas] was misidentified as the man who sold narcotics to Officer Crawford." *Id.* at 15.

Douglas also notes that Officers Bartle and Crawford gave contradictory testimony about the timing and circumstances of his arrest and points out that officers did not recover anything from his person on the day of his arrest and the Commonwealth failed to introduce the video of the drug transaction. Douglas states that the Commonwealth's failure to provide the video "undercuts" the officers' testimony that Douglas sold narcotics to Officer Crawford. *Id.* at 17. Douglas argues that police could have done more to confirm the identity of the seller but instead relied on the contradictory memories of Officers Crawford and Bartle. Douglas also claims that his trial testimony supports his conclusion that this is a case of misidentification.

We review the grant or denial of a challenge to the weight of the evidence for an abuse of discretion. *See Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Clemens*, 242 A.3d 659, 667 (Pa.Super. 2020) (citation omitted). A trial court should grant a new trial based on a weight challenge "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Clay*, 64 A.3d at 1055 (citation omitted).

Here, the trial court concluded that the verdict was not against the weight of the evidence. It found the testimony of Officers Crawford and Bartle to be credible and that "[Douglas'] testimony was not credible." **See** Rule 1925(a) Opinion, filed 9/20/22, at 8.

> Indeed, the Commonwealth presented more than merely sufficient evidence to support [Douglas'] conviction for possession with intent to deliver and knowingly and intentionally possessing a controlled substance. During the very detailed testimony provided by each Officer, they described extensive opportunity to view [Douglas] on 2 separate occasions. First, Officers Bartle and Crawford observed [Douglas] in the alley engaging in multiple exchanges. Next, Officers Bartle and Crawford again made observations of [Douglas] engaging in various exchanges in the parking lot. Given the fact that these Officers were conducting surveillance and trained to do so, this [c]ourt found it highly unreasonable to conclude that they were both mistaken about having witnessed [Douglas] in several exchanges on January 31, 2019, as well as several more exchanges on February 6, 2019 *after* having delivered narcotics to Officer Crawford. These Officers are trained law enforcement professionals who were on an investigative assignment for the purpose of identifying the sale of narcotics. Thus, the officers had to be intentionally fabricating their observations if there were a shred of truth to the testimony offered by [Douglas].
>
> Consequently, this [c]ourt could not conclude fabrication on the part of the officers because in addition to no motive to fabricate, the officers corroborated each other's testimony, and [Douglas] admits to being present each day described by the officers. Moreover, [Douglas] never denies wearing the clothing described by the officers as they observed the numerous exchanges in both the alley and the parking lot. It simply defies logic that someone looking like [Douglas], wearing the same clothing as [Douglas], and in the same area as [Douglas] but it was not [Douglas]. Moreover, Officer Crawford called the telephone number generated during the investigation and placed an order for narcotics which was in fact delivered by [Douglas]. It should be noted

that what was delivered was precisely what Officer Crawford ordered - $70 heroin and $30 cocaine. Thus, there was no doubt which was remotely reasonable that it was not [Douglas] who sold narcotics to Officer Crawford on February 6, 2019 in the parking lot of Texas Chicken and Burger.

*Id.* at 8-9 (emphasis in original).

We discern no abuse of discretion in the trial court's determination. As the court explained, the officers had multiple opportunities to view Douglas and identify him as the same individual that met with Officer Crawford in the parking lot. As factfinder, the court was "free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Clemens*, 242 A.3d at 667 (citation omitted). Even considering the Commonwealth's failure to pass the recording of Officer Crawford's and Douglas' interaction, the court had the opportunity to see and hear the evidence and give it the appropriate weight. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/2/2023