J-S17025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:                PENNSYLVANIA
:
v.                                 :
:
:
HAVEN HOILETT                      :
:
Appellant        :        No. 3221 EDA 2023

Appeal from the Judgment of Sentence Entered January 31, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006171-2017

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:           **FILED AUGUST 25, 2025**

Haven Hoilett appeals from the judgment of sentence entered following his convictions for aggravated assault, conspiracy to commit aggravated assault, firearms not to be carried without a license, and possession of an instrument of crime ("PIC").[1] Hoilett challenges the sufficiency and weight of the evidence. We affirm.

The trial court accurately summarized the facts from the jury trial as follows:

> On April 20, 2017 at approximately 11:30, Darius Richardson drove to a corner grocery store at 1726 West Cheltenham Avenue to purchase items. After waiting in line and purchasing these items, he was followed outside by a man who grabbed him and shot him in the pelvis. Richardson testified, and video from the store showed, that as he was leaving the store a man approached him from behind and put his arm around him. The man told

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 903, 6106, and 907, respectively.

Richardson to take a walk with him and pointed a gun at him. Richardson attempted to defend himself from what he perceived was an attempted robbery by pushing the man away. During the struggle, Richardson was shot one time in the pelvis. The shooter then searched Richardson's pockets, and after recovering nothing, fled the scene.

Richardson wrapped up his wound with his hooded sweatshirt, got back into his car, and drove back to his house. His mother and aunt then drove him to the hospital. While at the hospital, Richardson spoke to Police Officer Taulant Xhelo and attempted to give a description of the shooter. Richardson described the offender as a black male, approximately five foot eight inches tall who carried a black handgun. Richardson testified that this was his first time seeing the man, and since the man approached him from behind and stayed at his side before shooting him, he could not see the offender clearly enough to identify him. He also testified that he was shown a photo array at the hospital but he could not identify the assailant.

Detective Justin Falcone was assigned as the lead detective to investigate this shooting. He first went to Albert Einstein Hospital to interview Richardson. After Richardson told Detective Falcone about the details and location of the shooting, Detective Falcone called Detective Patrick Murray and asked him to go to the store at 1726 West Cheltenham Avenue. Detective Murray went to the store and recovered video of the incident from cameras located inside and outside of the store. Detective John Druding went to the store to obtain transaction records from around the time of the shooting. The store's records showed that a Pennsylvania Access Card (hereinafter "EBT" card) was used to make a small purchase around 11:43 a.m. The card was registered to Kashaun Pace, otherwise known as Haven Hoilett . . . .

Officer Scott McLane was asked by detectives to watch the video of the shooting and the moments before the shooting. He recognized two men from the video as James Heath and Haven Hoilett . . . . Officer McLane testified that on March 15, 2017, about a month prior to the shooting, he pulled over [Hoilett] and Heath near 1400 Cheltenham Avenue. Officer McLane testified that he had a "lengthy talk" with [Hoilett] and his face was "fixed in [his] memory."

- 2 -

With the information collected, Detective Falcone applied for a search and seizure warrant for 1805 West Cheltenham Avenue, an address "associated with" [Hoilett]. While waiting for the warrant to be authorized, Detective Falcone drove by the residence and saw [Hoilett's] car in the driveway. The Detective called Officer Ryan Delricci and instructed him to "keep an eye on" the vehicle. While Officer Delricci was watching the vehicle, [Hoilett] got in the car and attempted to drive away when he was pulled over and arrested. Shortly after, Detective Falcone and his investigative partners executed a search warrant at the residence where they recovered one 9-millimeter handgun under the mattress in what they believed was [Hoilett's] room. Heath was arrested at the residence during the search. Additionally, they found several black shirts and a pair of camouflage Croc shoes similar to the clothing items worn by the shooter in the video.

Detective Murray swabbed multiple portions of the handgun for DNA and sent these samples to the crime laboratory. Detective James Poulos obtained a swab of [Hoilett's] DNA and sent it to the crime laboratory. Craig Judd, an expert qualified in the area of forensics and DNA analysis, handled the DNA samples at the laboratory and conducted an analysis of the DNA. He concluded that the DNA taken from various parts of the handgun was consistent with three individuals, with the "major component of the DNA mixture" matching the DNA obtained from [Hoilett]. Judd explained that [Hoilett's] DNA being labeled a "major component" in the mixture meant that he contributed a significant amount more DNA than the other two individuals in the mixture.

On March 5th, 2018 Detective Cahill obtained a projectile from Albert Einstein Medical Center that was removed from Richardson. He delivered the evidence to the Firearms Identification Unit. Officer Kelly Walker, an expert qualified in the area of firearms identification, concluded that the bullet removed from Richardson was . . . fired from the 9-millimeter handgun recovered from [Hoilett's] room at 1805 West Cheltenham Avenue.

James Heath, [Hoilett's] co-conspirator, testified that on April 20, 2017, he went to the store on Cheltenham Avenue to buy breakfast. At the time Heath was working and living

at 1805 Cheltenham Avenue in the residence of Linda Pace.
That morning, Heath saw Richardson pull out money in the
store to pay for his items and sent a text message to
[Hoilett] instructing him to come to the store and bring a
gun. Heath testified that his intent was to rob Richardson.
Heath identified himself and [Hoilett] from the video inside
the store. Heath also identified Hoilett as the man who
followed Richardson when he left the store. He
acknowledged that he and Hoilett had previously discussed
the possibility of robbing someone. At trial, both counsel
stipulated that Hoilett is not licensed to carry a concealed
weapon and that, based on Darius Richardson's medical
records, he suffered severe pain and had moderate bleeding
from his gunshot wound.

Trial Court Opinion, filed Aug. 8. 2024, at 2-4 (unpaginated) (internal citations

omitted; "Mr." omitted throughout).

The jury convicted Hoilett of aggravated assault,[2] conspiracy to commit

aggravated assault, firearms not to be carried without a license, and PIC. The

trial court sentenced him to an aggregate term of six to 12 years' incarceration

and a consecutive three years' probation. ***See*** Order, filed Jan. 31, 2020. In

February 2020, Hoilett filed a post sentence motion, arguing, among other

things, that the verdict was against the weight of the evidence. The trial court

denied the motion. ***See*** Order, filed Mar. 3, 2020. In February 2022, following

the filing of a Post Conviction Relief Act ("PCRA") petition, the trial court

reinstated Hoilett's direct appeal rights. Counsel filed a notice of appeal, but

did not file an appellate brief and therefore this Court dismissed the appeal.

---

[2] In finding Hoilett guilty of aggravated assault, the jury answered "yes" to
the question, "Was Serious Bodily Injury Caused," and "no" to the question,
"Did Attempt to Cause Serious Bodily Injury." Verdict Report, dated Oct. 25,
2019.

After Hoilett filed a second PCRA petition, the trial court again reinstated his direct appeal rights. Hoilett filed a timely notice of appeal.

Hoilett raises the following issues:

> 1. Whether the evidence put forth at trial was sufficient to demonstrate that Hoilett caused "serious bodily injury."
>
> 2. Whether the verdict was against the weight of the evidence in the situation where (1) the complaining witness could not identify Hoilett and the physical description he gave of his attacker was different than Hoilett; (2) Hoilett's alleged co-conspirator provided inconsistent testimony about whether Hoilett was at the grocery store; (3) the circumstantial evidence was inconsistent; and (4) the testimony of the police officers did not credibly identify Hoilett as the individual depicted on the video.

Hoilett's Br. at 6-7 (trial court and suggested answers omitted).

Hoilett first challenges the sufficiency of the evidence to support his aggravated assault conviction. He contends the Commonwealth did not establish the serious bodily injury element. He claims the evidence proved only bodily injury, reasoning Richardson testified to feeling "little" pain and that he "didn't leak much blood." *Id.* at 12 (internal citations omitted). Hoilett further contends that, because his actions caused only bodily injury, the Commonwealth was required to establish he intended to inflict serious bodily injury, and it failed to do so.

Sufficiency of the evidence is a question of law, which we review *de novo*. **Commonwealth v. Mikitiuk**, 213 A.3d 290, 300 (Pa.Super. 2019) (internal citation omitted). When we review a challenge to the sufficiency of the evidence, "we must determine whether the evidence admitted at trial, and

all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support[s] the conviction beyond a reasonable doubt." ***Commonwealth v. Clemens***, 242 A.3d 659, 664 (Pa.Super. 2020) (citation omitted). "In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the factfinder[,]" who is "free to believe all, part, or none of the evidence." ***Id.*** at 665.

An aggravated assault as charged here is committed when one "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Here, the Commonwealth presented sufficient evidence of a serious bodily injury. The evidence established that the victim's pelvis was shattered due to the gunshot wound, he underwent surgery, and he had to wear a brace for several months. N.T., Oct. 22, 2019, at 47-49. The Commonwealth also introduced medical records indicating Richardson suffered severe pain and moderate bleeding and that the bullet had been removed during surgery. N.T., Oct. 24, 2019, at 5, 130-31. This was sufficient to prove Richardson suffered a serious bodily injury. ***See Commonwealth v. King***, 234 A.3d 549, 566 (Pa.

2020) (pointing out that evidence of serious bodily injury was overwhelming and uncontroverted where victim suffered two gunshot wounds resulting in a shattered hipbone and anklebone, requiring multiple surgeries and occupational and physical therapy); *Commonwealth v. Santiago*, 294 A.3d 482, 485 (Pa.Super. 2023) (finding serious bodily injury in the case of a concussion).[3]

Hoilett next maintains that the verdict was against the weight of the evidence. He points out the victim could not identify Hoilett by description or photo lineup. He further claims there was conflicting testimony about Hoilett's presence at the grocery store and the circumstantial evidence was inconsistent. Hoilett's Br. at 15-16. He argues the co-conspirator's testimony was contradictory, referencing Heath's conflicting testimony as to whether the robbery was planned via text. *Id.* at 17. Hoilett also asserts that Heath's testimony implicates Heath for the assault. Finally, he questions the credibility of the police officer's identification of Hoilett.

"We review a trial court's order denying a weight challenge for an abuse of discretion." *Commonwealth v. Fallon*, 275 A.3d 1099, 1107 (Pa.Super. 2022). Because the trial court heard the testimony firsthand, we must "give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against

---

[3] Because we find the Commonwealth established Richardson suffered a serious bodily injury, we need not address Hoilett's claim that, because the Commonwealth failed to establish a serious bodily injury, it had to prove a specific intent to cause such injury.

the weight of the evidence." *Id.* (citation omitted). "To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa.Super. 2017) (internal quotation marks and citation omitted). Further, "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citation omitted).

Here, the identification evidence included the surveillance video, testimony of a police officer who was familiar with Hoilett, distinct clothing found in Hoilett's bedroom,[4] testimony from Hoilett's co-conspirator, and DNA evidence on the firearm used to cause the victim's gunshot wounds. The trial court did not abuse its discretion when it rejected Hoilett's weight claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/25/2025

---

[4] *See* N.T. 10/24/2019, at 79.