J-S39020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES W. LYNCH III | : | |
| | : | |
| Appellant | : | No. 460 MDA 2023 |

Appeal from the Judgment of Sentence Entered September 15, 2021
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0001593-2018

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: DECEMBER 15, 2023**

Charles W. Lynch III appeals from the judgment of sentence imposed on his conviction for intimidation of witnesses or victims. ***See*** 18 Pa.C.S.A. § 4952(a)(3). He challenges the sufficiency and weight of the evidence and one adverse evidentiary ruling. We affirm.

The pertinent facts were summarized by the trial court as follows.

[Lynch] arrived at the Franklin County Courthouse for his preliminary hearing for a separate docket [for charges of drug delivery resulting in death and possession with intent to deliver]. After speaking to his attorney, [Lynch] returned to the detention cell and saw Kathleen Weaver, a co-defendant in his [drug] case, on the female side of the detention cell. [Lynch] stopped in front of the female detention cell and said, "You fucking bitch." Ms. Weaver was the only woman in the holding cell that reacted. She "immediately jumped up. She looked like she just seen a ghost. She look[ed] petrified."

After [Lynch] returned to the detention cell, other inmates asked him what happened. [Lynch], referring to Ms. Weaver, started "making comments about she's a snitch." The other inmates responded to the Defendant and asked[,] "Who is a snitch" and

some inmates said[,] "We'll have to get her." A sheriff's deputy needed to go into the detention cell and escort Ms. Weaver to another location for her own safety.

Trial Court Opinion, filed 5/12/23, at 2-3 (footnote and citations to notes of trial testimony omitted). The Commonwealth charged Lynch with intimidation of witnesses or victims and joined the case with Lynch's drug delivery case.

Weaver then testified against Lynch at the preliminary hearing for both cases. She implicated Lynch in the drug delivery case. Regarding the instant case, she testified that while she had been in the courthouse detention cell, Lynch had "started telling her that he was going to get her, and that she was a snitch and a rat. She understood this to mean that [Lynch] was going to have her beat up." Order Denying in Part/Granting in Part Motion in Limine, 2/11/21, at 2. The court bound both cases for trial.

Weaver thereafter died from a heart attack. The Commonwealth filed a motion *in limine*, requesting leave to introduce at trial Weaver's testimony from the preliminary hearing. The court granted the motion. **See** Pa.R.E. 804(b)(1) (providing former testimony of an unavailable witness is an exception to the rule against hearsay). The cases proceeded to a bench trial.

At trial, after the investigating officer testified, the Commonwealth introduced a transcript of Weaver's testimony from the preliminary hearing. On cross-examination, defense counsel asked the officer if Weaver's preliminary hearing testimony about Lynch's involvement in the drug delivery had been consistent with her grand jury testimony. The Commonwealth objected, arguing the court could not consider the grand jury testimony

because it was hearsay and, unlike the preliminary hearing testimony, it had not been taken during an adversarial proceeding. The court sustained the objection.

Relevant to this appeal, the Commonwealth also introduced the testimony of Franklin County Sherrif's Office Deputy Wayne Souders, who had been an eyewitness to the incident in the holding cell. In addition to recalling the event, he testified that once Lynch told the other inmates that Weaver was a "snitch," they responded, "'I know females on the other side.' 'We'll get her.' 'You don't have to worry about that.' 'We'll get her.'" N.T., 7/19/21, at 82. He said that after the interaction, Weaver "was scared to death. She was pacing back and forth in the cell. She look[ed] scared to death." *Id.* at 85.

He stated that the only direct threat Lynch made to Weaver "was calling her a snitch." *Id.* at 88. He did not hear Weaver state he was "going to get" Weaver. *Id.* at 89. However, Deputy Souders testified that he had been a correctional officer for 25 years, and in his experience, "inside of a correctional setting if you get someone labeled a snitch you have got a very good chance of getting them killed or seriously injured at least but someone will do something to them 90 percent time [sic]." *Id.* at 83. He made the point a second time: "Inside a correctional institution, a correctional environment if you get labeled a snitch you got an excellent chance of being seriously injured or killed. I mean, you got inmates looking to put, like, a little feather in their cap for killing a snitch, injuring a snitch." *Id.* at 90. He stated that in some instances, an inmate will reach around another from behind and cut their face

"from the lip clean to the ear" as a "message telling them that they need to shut up." *Id.* He said that if he attempts to jest with an inmate about "tell[ing] on anybody[,] . . . their face will turn white and they will tell you, 'Don't even joke like that around here.' 'If you joke like that and somebody hears you will get me killed.'" *Id.* at 91.

Lynch testified in his own defense. He stated that he was angry about allegedly "being lied on" regarding the drug delivery charges and admitted to spontaneously saying to Weaver when he saw her in the detention cell, "You fucking bitch." *Id.* at 102. He also admitted telling the other people in the cell, "[T]he lady next door is a snitch. She's trying to implicate me in something that I didn't do[.]" *Id.* He stated the other inmates then "started going off about it and I was just sitting on the bench." *Id.* He testified that he did not believe Weaver would be hurt based on his comments. *Id.* at 104. He alleged that if he had wanted someone to harm Weaver, he would have asked his girlfriend, who lived in Weaver's detention unit, to do it. *Id.* at 104-05.

The court found Lynch guilty of intimidating a witness. Lynch filed a motion to waive his right to counsel for his sentencing proceeding. The court granted the motion, and Lynch proceeded *pro se* at his sentencing hearing, on September 15, 2021. The court sentenced Lynch to 24 to 54 months' incarceration.

That same day, the court issued an order instructing the court's administrative office to appoint an attorney to represent Lynch for an appeal. The order also acknowledged that Lynch had 10 days in which to file a post-

sentence motion,[1] but stated that it would issue an order to ensure appointed counsel would timely preserve Lynch's issues or request additional time from the court to do so:

> The Court will note that there is a 10-day time limit in which [Lynch] is expected to notify the [c]ourt of his issues to be raised on appeal. For those reasons, the [c]ourt will issue an order to counsel and advise that counsel shall take steps to preserve [Lynch]'s issues on appeal or seek leave of court for additional time in which to file a post-sentence motion in consultation with [Lynch].

Order, 9/15/21, at 1-2. Nine days after his sentencing hearing, on Friday, September 24, 2021, the court appointed counsel. The order did not reference the imminent 10-day deadline for filing post-sentence motions.

Two days later, on Sunday, September 26, 2021, although he was now represented by counsel, Lynch submitted a *pro se* post-sentence motion.[2] Although he did so on the eleventh day after sentencing, because the tenth day fell on a Saturday, Lynch had until Monday, September 27, 2021, to file a timely post-sentence motion. *See* 1 Pa.C.S.A. § 1908. His motion stated that although the court had ordered at his sentencing hearing that it would appoint counsel to preserve Lynch's issues for appeal, Lynch had "yet to speak to anyone or receive any notice from an attorney acknowledging the concerns

---

[1] *See* Pa.R.Crim.P. 720(A)(1).

[2] The motion was not docketed by the trial court until October 4, 2021. However, the date of a prisoner's filing is the date he handed it to prison authorities for mailing. *See Commonwealth v. Saunders*, 946 A.2d 776, 780 n.7 (Pa.Super. 2008) (finding Rule 1925(b) statement timely under prisoner mailbox rule based on date of proof of service).

raised in the [c]ourt's order." Post-Sentence Motion, 9/26/21, at 2. Lynch raised numerous issues in his *pro se* post-sentence motion, including a challenge to the weight of the evidence.

Counsel moved to withdraw due to a conflict of interest. On October 5, 2021, the court granted counsel leave to withdraw and appointed new counsel. The court directed counsel to adopt or amend Lynch's *pro se* post-sentence motion within 30 days. Counsel filed a motion asking the court to extend the deadline, and on November 3, 2021, the court granted the motion, giving counsel until Friday, November 19, 2021, to file a post-sentence motion.

Lynch's counsel filed a post-sentence motion three days after the extended deadline, on Monday, November 22, 2021. The court denied the motion on the merits, and Lynch appealed. However, this Court quashed that appeal as untimely. The Court explained that Lynch's counseled post-sentence motion had been filed more than 10 days after the imposition of sentence, and therefore, presumably, had not tolled the appeal period. ***See Commonwealth v. Lynch***, No. 471 MDA 2022 (Pa.Super. filed May 17, 2022) (per curiam order).

Lynch then filed a timely petition for post-conviction relief, and on March 2, 2023, the trial court reinstated his direct appeal rights. The court gave

Lynch 30 days to file a direct appeal *nunc pro tunc*. This timely appeal followed.[3]

Lynch raises the following:

1. Did the trial court err in refusing to admit prior inconsistent statements of the alleged victim, Kathleen Weaver, made during previous grand jury proceedings whereby preventing [Lynch] from impeaching her credibility in general and denying [Lynch] due process?

2. Did the trial court err in finding [Lynch] guilty of intimidation of witnesses or victims where the evidence was not sufficient to support said verdict?

3. Did the trial court err in finding [Lynch] guilty of intimidation of witnesses or victims where said verdict was against the weight of the evidence?

Lynch's Br. at 8. The Commonwealth has elected not to file a brief.

We will first address Lynch's challenge to the sufficiency of the evidence. Lynch claims that although he called Weaver a "bitch" and a "snitch," this does not equate to a threat of violence. He maintains that the Commonwealth did not offer any evidence that he had previously threatened or harmed Weaver such that these words would have been particularly threatening or intimidating. He also asserts the Commonwealth failed to prove beyond a reasonable doubt that he should have assumed that his words would have resulted in other prisoners harming Weaver or interfering with her testimony.

---

[3] Lynch's notice of appeal purports to be from the verdict, the judgment of sentence, and the order denying post-sentence motions. However, the appeal in a criminal case lies from the judgment of sentence. *See Commonwealth v. Wenzel*, 248 A.3d 540, 547 n.4 (Pa.Super. 2021), *appeal denied*, 264 A.3d 753 (Pa. 2021). We have amended the caption accordingly.

A challenge to the sufficiency of the evidence presents a question of law. ***Commonwealth v. Mikitiuk***, 213 A.3d 290, 300 (Pa.Super. 2019). "Our standard of review is *de novo*, and our scope of review is plenary. ***Id.***

Evidence is sufficient when it "enable[s] the trier of fact to find every element of the crime has been established beyond a reasonable doubt[.]" ***Commonwealth v. Clemens***, 242 A.3d 659, 665 (Pa.Super. 2020) (citation omitted). In conducting our review, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth. ***Id.*** at 664. We must not "weigh the evidence and substitute our judgment for that of the fact-finder," who "is free to believe all, part, or none of the evidence." ***Id.*** at 665.

Intimidation of a witness is defined as follows:

**(a) Offense defined.--**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to: . . .

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

18 Pa.C.S.A. § 4952(a)(3).

The Commonwealth need not prove the defendant successfully intimidated the witness, only that the defendant attempted to intimidate the witness with the intent to, or knowledge that his conduct would, interfere with the administration of criminal justice. ***Commonwealth v. Beasley***, 138 A.3d 39, 48 (Pa.Super. 2016). The Commonwealth can prove the defendant's intent

- 8 -

or knowledge through wholly circumstantial evidence. ***Id.*** Moreover, the statute does not require the Commonwealth to prove the defendant explicitly threatened the witness. Rather, intimidation may be accomplished impliedly, "with no words at all[;] a mere look or posture can bully, threaten, coerce, frighten, or intimidate beyond question." ***Commonwealth v. Doughty***, 126 A.3d 951, 957 (Pa. 2015).

Here, Lynch himself testified that when he saw Weaver in the courthouse detention cell, he called her a "bitch" and then told the other inmates she was a "snitch" and intended to offer false testimony against him. Deputy Souders testified that the other inmates then repeatedly threatened Weaver by saying, "We'll get her," and Lynch admitted that he did nothing to stop them. Deputy Souders testified that Lynch's smear against Weaver, made in the correctional setting, was likely to result in her physical harm, and that Weaver appeared to be "scared to death" by the remarks.

Viewing this evidence in the light most favorable to the Commonwealth, and making all reasonable inferences from it in the Commonwealth's favor, it is sufficient to prove beyond a reasonable doubt that Lynch intended or knew his conduct would intimidate Weaver into refraining from testifying against him. His sufficiency claim fails.[4]

---

[4] In addition, Weaver testified at the preliminary hearing that Lynch had stated he was "going to get her." However, as discussed below, Lynch argues the court erred in preventing him from challenging the credibility of Weaver's preliminary hearing testimony through the introduction of her grand jury
*(Footnote Continued Next Page)*

We next address Lynch's claim that the verdict is against the weight of the evidence. He argues he testified that his words were a product of the heat of the moment, and that he had not wished any harm on Weaver. He also argues that Deputy Souders testified that it was other inmates who conveyed actual threats against Weaver, and no testimony that Lynch sought or expected this result.[5]

We review an order denying a weight challenge for an abuse of discretion. **Commonwealth v. Fallon**, 275 A.3d 1099, 1107 (Pa.Super. 2022). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." **Id.** (citation omitted). A trial court may sustain a weight challenge only "when

_____

testimony. We find the evidence sufficient even without considering Weaver's testimony.

[5] Although the trial court advised Lynch that it would appoint counsel to preserve his post-sentence rights, it did not do so until nine days after sentencing. Under these circumstances, we decline to find waiver. Under **Commonwealth v. Leatherby**, 116 A.3d 73, 79 (Pa.Super. 2015), Lynch's *pro se* post-sentence motion did not offend hybrid representation, was timely, and preserved his weight claim. Furthermore, the trial court in effect considered counsel's "amended" post-sentence motion as a supplement to Lynch's timely *pro se* post-sentence motion. **See** Pa.R.Crim.P. 720(B)(1)(b) and 720(B)(3)(a) (collectively providing if defendant files timely post-sentence motion, court may allow defendant to file a supplemental post-sentence motion so long as the court can decide the motion within the 120-day time limit). The court ultimately decided the motion on its merits, and it did so within 120 days of when Lynch filed his *pro se* post-sentence motion.

the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* (citation omitted).

Lynch's weight challenge lacks merit. Here, the court, which sat as factfinder, stated that it listened to Deputy Souder's testimony and Lynch's testimony, observed their demeanors, and "where the testimony conflicted, [it] made a credibility determination." Trial Ct. Op. at 19. The court noted that Lynch admitted "he called [Weaver] a snitch and told other prisoners that she testified against him." *Id.* at 20. It inferred Lynch had intended to intimidate Weaver "based on the common perception of the word 'snitch' and the prisoners' reactions to [Lynch] calling [Weaver] a 'snitch[.]'" *Id.* It denied the weight claim.

The court did not abuse its discretion. The verdict was no so contrary to the evidence – or even Lynch's own testimony – as to require a new trial.

Finally, we address Lynch's argument that the court erred in ruling he could not introduce Weaver's grand jury testimony. He argues Weaver's prior inconsistent statements were relevant to the factfinder's assessment of her credibility, even if the testimony only directly related to the facts of the drug case. Lynch argues that the factfinder's acceptance of Weaver's testimony was necessary to prove intimidation of a witness, because it was the only evidence that Lynch told Weaver, "I'm going to get you."

The trial court concluded the grand jury testimony was inadmissible hearsay. It found the testimony was not admissible as substantive evidence

under the hearsay exceptions for a prior inconsistent statement or the former testimony of an unavailable witness, *see* Pa.R.E. 803.1(1), 804(b)(1), or as non-hearsay impeachment evidence, *see* Pa.R.E. 613(a), (b). The court also found that even if it erred, the error was harmless because Deputy Souder's testimony alone established Lynch's guilt beyond a reasonable doubt.

We note at the outset that while Lynch argues the grand jury testimony was relevant and that its preclusion prejudiced him, he does not contest the trial court's finding that it was inadmissible under the Pennsylvania Rules of Evidence. He has therefore afforded us no basis on which to grant him relief.

In any event, we agree with the court that any error in excluding the testimony was harmless. An error is harmless if:

> (1) the error did not prejudice the defendant or the prejudice was de minimis; or
>
> (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or
>
> (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Fulton*, 179 A.3d 475, 493 (Pa. 2018) (citation omitted). In a criminal case, we must find an error harmless beyond a reasonable doubt in order to excuse it. *See Commonwealth v. Hamlett*, 234 A.3d 486, 488 (Pa. 2020).

Here, the court's preclusion of Weaver's grand jury testimony did not prejudice Lynch because the trial court, sitting as fact-finder, did not convict

- 12 -

Lynch based on her testimony. Instead, in its Rule 1925(a) opinion, the trial court explained that it was persuaded by Deputy Souders' testimony and Lynch's own testimony, and emphasized the uncontradicted testimony that Lynch told the other prisoners that Weaver was a "snitch" who had testified against him, their reactions to this remark, and the common perception of the word. **See** Trial Ct. Op. at 19-20.[6] Weaver's grand jury testimony therefore had no bearing on the verdict.

---

[6] We note that in its order denying Lynch's post-sentence motion, the trial court stated the verdict was not contrary to the weight of the evidence, because Lynch had not contradicted Weaver's preliminary hearing testimony that Lynch had said to her, "I am going to get you." **See** Order, 3/3/22, at 9. However, the court seems to have been responding to Lynch's argument that Weaver's preliminary hearing testimony was the only evidence supporting the charges and that her testimony was insufficient. **See id.** at 7. Moreover, in the same paragraph, in contradiction to its conclusion, the court stated that "there is no evidence that would suggest or support these convictions. As a result, these convictions should shock one's conscience. This is a conviction where the evidence does not support the conviction." **Id.** As the reasoning expressed in the order denying the post-sentence motion was less than clear, and because it did not encompass the court's reflection on the weight of all of the trial evidence that the court considered supported the conviction, we rely on the reasoning expressed in the trial court's Rule 1925(a) opinion.

- 13 -

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/15/2023</u>