**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AUGUSTO CEASAR COLLAZO | : | |
| | : | |
| Appellant | : | No. 1639 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 16, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002264-2022

BEFORE: BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 16, 2024**

Augusto Ceasar Collazo appeals from the judgment of sentence entered following his convictions for burglary, criminal trespass, and theft by unlawful taking.[1] Collazo challenges the sufficiency and weight of the evidence. We affirm.

The trial court accurately summarized the facts from the jury trial as follows:

> [O]n June 29, 2022, at approximately 3:15 P.M., Mohamed Elzalabany, the owner and operator of Mo's Eatery located at 806 Hamilton Street, Allentown, Lehigh County, Pennsylvania, personally locked up the establishment and left for the evening. Mr. Elzalabany explained that the back door does not require any affirmative action to lock it, as the lock mechanism is designed to automatically lock upon the door being closed. Mo's Eatery only serves breakfast and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3502(a)(4), 3503(a)(1)(ii), and 3921(a), respectively.

lunch, with the hours of operation being 7:00 A.M. to 3:00 P.M, Monday through Friday. At approximately 7:00 A.M. on June 30, 2022, Mr. Elzalabany received a telephone call from his employee who was in charge of opening Mo's Eatery on that morning, as the employee immediately noted upon his arrival that several items within the eatery were missing or moved. Mr. Elzalabany arrived five (5) minutes later and confirmed the employee's findings. In particular, the two (2) cash drawers that had been stacked one on top of the other on the counter had been torn out, and the locked cash drawer that was empty but had been used as a platform to raise the second cash drawer was missing. Additionally, the trash can was moved and the interior trash bag had been removed, papers from Mr. Elzalabany's desk were lying on floor, the printer system that typically was perched on top of the two cash drawers was dangling from the countertop, money was missing from the remaining cash draw/tray, and the money bag that typically occupied a place under the counter was gone. Mr. Elzalabany testified that the money missing from the cash drawer/tray amounted to approximately $270.00 in paper currency, in addition to approximately $50.00 in rolled coinage. Similarly, Mr. Elzalabany explained that approximately $200.00 in paper currency and $60.00 in rolled coinage had been in the blue PNC Bank bag that was no longer in the restaurant.[4] No further damage was done to Mo's Eatery other than damage to the rear door and door frame/wall. The damage to the back door, door frame, and adjacent wall included marks, dents, and chipped paint, as if crow bar had been used to gain entry. As a result of noting these observations, Mr. Elzalabany notified the authorities.

[4] Mo's Eatery is predominantly a credit card business, with approximately 70% of the food purchases paid with a credit card. The cash that remained on the premises on the night of June 29, 2022 was to allow for ease of making change for the cash purchases the following day.

Officer Scott Walz, assigned to the Community Outreach Unit (bike patrol) of the Allentown Police Department, responded to Mo's Eatery for a report of a burglary. Officer Walz requested the assistance of the Allentown Identification Division to gather evidence, take photographs, and obtain fingerprints, if possible.[5] It was

determined that Mo's Eatery was not monitored by an alarm company or equipped with an alarm or surveillance cameras. Therefore, in furtherance of the investigation, Detective Yamil Castillo of the Allentown Police Department acquired video footage capturing June 29, 2022, between the hours of 10:45 P.M. and 11:02 P.M., from the restaurant, La Bicicleta Arepa Bar, located at 12 South 8th Street, Allentown, Lehigh County, Pennsylvania, as well as from the City Center surveillance camera located at South 8th and Maple Streets, Allentown, Lehigh County. The City Center video footage is broken up into two (2) segments.

[5] Fingerprints were lifted off of the remaining cash drawer. However, these prints did not match those of Mr. Elzalabany nor the Defendant, and it remains unknown as to whom they belong.

A review of the first clip of the City Center surveillance video footage depicts a person riding a scooter/mini-bike east on Maple Street and making a left hand turn to head north on South 8th Street. The individual then parks the scooter/mini-bike and proceeds to walk southbound on 8th Street towards Maple Street. After passing Type Street (an east/west road parallel to and just north of Maple Street), the person doubles back and walks back to the scooter/minibike, passing it. Then, the individual turns around and again heads southbound on South 8th Street and makes a right onto Maple Street, heading west. The person in the video is wearing light-colored clothing, a black backpack, dark loafers with chunky white soles, and a chunky watch. Approximately one (1) minute later,[6] a male wearing light-colored clothing and a black backpack can be observed walking up an alley perpendicular to Type Street and arriving at the back door of Mo's Eatery, which is illuminated by a light over the door. The individual is then seen rocking back and forth for approximately thirty (30) seconds and subsequently the rear door to Mo's Eatery pops open and the person enters the establishment.

[6] During this investigation, Sergeant Murray of the Allentown Police Department walked from the corner of Maple Street (when out of view of the City Center camera) to the area in the vicinity of the back door of Mo's Eatery. It took Sergeant Murray approximately

forty-five (45) seconds to walk the area that is blocked from view of the camera.

The second clip of the City Center surveillance video footage, approximately ten (10) minutes after the rear door of Mo's Eatery opened and the individual entered and disappeared from view, illustrates a person wearing light[-]colored clothing and a black backpack emerge from the back door of Mo's Eatery and head towards Maple Street. The individual is out of view of the camera for approximately thirty (30) seconds and then reappears on Maple Street heading eastbound. The person makes a left onto South 8th Street and walks towards the scooter/mini-bike. After walking the scooter/mini-bike to the corner of 8th and Maple Streets, the person mounts the scooter/mini-bike and heads westbound on Maple Street out of the view of the camera.

A review of three (3) different angles from the surveillance video footage obtained from La Bicicleta depicts the area in front of this restaurant. The video shows a male on a scooter/mini-bike pull up behind a white SUV and park on South 8th Street. The individual is wearing white clothing, a black backpack, a chunky watch, and dark loafers with chunky white soles. Like the video footage from City Center, an individual can be seen walking southbound on 8th Street, doubling back upon reaching Type Street, and then turning around again to head towards Maple Street. Also, the individual can be seen removing the black backpack from his back and holding it with his hands. The individual makes a right turn onto Maple Street and then disappears from view for approximately ten (10) to fifteen (15) minutes. After this time frame, a male wearing light clothing, a black backpack, a chunky watch, and dark loafers with chunky white soles emerges from Maple Street and heads back to the scooter/mini-bike. The person walks the scooter/mini-bike against the flow of traffic and then mounts the scooter/mini-bike and turns onto Maple Street heading westbound.

Detective Castillo compiled an "Attempt to Locate" flyer based on still photographs captured from the La Bicicleta surveillance video. The "Attempt to Locate" flyer was thereafter emailed to Allentown Police Department patrol units and addressed with officers during roll call. Officer Jacqueline Murray, assigned to the Community Outreach

Unit (bike patrol) of the Allentown Police Department was one such officer who reviewed the "Attempt to Locate" flyer. On July 7, 2022, prior to the commencement of her 4:00 P.M. patrol shift, she additionally requested to review the surveillance footage from La Bicicleta, in order to glean further physical characteristics about the suspect. Thereafter, on July 7, 2022, at approximately 7:30 P.M., while patrolling the area of 7th and Hamilton Streets, Allentown, Lehigh County (approximately one (1) block from Mo's Eatery) Officer Murray observed a male who matched the description of the suspect in the "Attempt to Locate" flyer, as well as the La Bicicleta video that she watched from the night of the burglary at Mo's Eatery. In particular, Officer Murray noted the similarity in uneven gait and comportment (hunched shoulders), as well as the black backpack with two (2) zippers, chunky watch on his wrist, and dark loafers with chunky white soles. As a result of these striking similarities, Officer Murray effectuated a stop of [Collazo], with the assistance of Officer Walz on the northeast corner of Hamilton Street. She and Officer Walz placed [Collazo] in investigative detention while Officer Murray notified a detective of the stop.

Sergeant Damian Murray of the Criminal Investigations Division arrived on scene, as Detective Castillo was unavailable. Officer Murray discussed the similarities between the "Attempt to Locate" flyer, the video surveillance footage, and [Collazo]. After conversing with Officer Murray, Sergeant Murray approached [Collazo] and explained that he was investigating a burglary. He then showed [Collazo] the scooter/mini-bike in the still photographs from the "Attempt to Locate" flyer, to which [Collazo] admitted that it was his bike. [Collazo] further stated to Sergeant Murray that he rides his bike around town, as well as posed a question regarding how does he know that he was not stopping to "take a piss." Shortly thereafter, Sergeant Murray plays a portion of the video surveillance footage from La Bicicleta for [Collazo] to view, and [Collazo] again confirms that the bike in the video surveillance footage is his bike. [Collazo] was then taken into custody.

Finally, Mr. Elzalabany testified that although he did recognize [Collazo] as someone who entered the premises a couple days before this incident but left without ordering

> any food, he did not provide [Collazo] with permission to enter his establishment when it was closed to the public.

Trial Court Opinion, filed May 15, 2023, at 3-9 (citations to record omitted).

After the trial, the jury convicted Collazo of burglary, criminal trespass, and theft by unlawful taking. On March 16, 2023, the trial court sentenced Collazo to five to ten years' incarceration for the burglary conviction. It found the remaining convictions merged for sentencing purposes. Collazo filed a post sentence motion challenging, among other things, the sufficiency and weight of the evidence. The trial court denied the motion. Collazo filed a timely notice of appeal.

Collazo raises the following issues:

> A. Whether the evidence was sufficient to sustain the . . . convictions if the Commonwealth failed to present proof of [Collazo] being the perpetrator of the criminal offenses?

> B. Was the verdict against the weight of all the evidence in regards to the proof of whether or not [Collazo] was the perpetrator of the criminal offenses?

Collazo's Br. at 8 (lower court action omitted).

Collazo first challenges the sufficiency of the evidence. He maintains the Commonwealth failed to establish he was the individual who entered the building. Collazo argues that the individual in the video surveillance could not be positively identified and that, although he agreed the scooter belonged to him, he did not admit that he entered the restaurant.

Sufficiency of the evidence is a question of law, which we review *de novo*. ***Commonwealth v. Mikitiuk***, 213 A.3d 290, 300 (Pa.Super. 2019). "When reviewing a challenge to the sufficiency of the evidence, we must

determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support[s] the conviction beyond a reasonable doubt." ***Commonwealth v. Clemens***, 242 A.3d 659, 664 (Pa.Super. 2020) (internal quotation marks and citation omitted). "In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the factfinder[,]" who is "free to believe all, part, or none of the evidence." ***Id.*** at 665. We grant relief only where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Lynch***, 242 A.3d 339, 352 (Pa.Super. 2020) (quoting ***Commonwealth v. Franklin***, 69 A.3d 719, 722 (Pa.Super. 2013)).

A person is guilty of burglary if, "with the intent to commit a crime therein, the person . . . enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa.C.S.A. § 3502(a)(4). A person is guilty of criminal trespass if he "knowing that he is not licensed or privileged to do so, . . . breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S.A. § 3503(a)(1)(ii). Further, a person commits theft by unlawful taking where he "unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

- 7 -

Here, the Commonwealth presented sufficient evidence to establish Collazo was the individual who entered the restaurant and left with the money. Collazo had a similar appearance to the person seen in the video, including his clothing and accessories, his gait, and his hunched shoulders. Further, the video captured the perpetrator riding a scooter, and Collazo admitted the scooter in the video belonged to him. The evidence was sufficient to support a finding that he was the individual who entered the restaurant and committed the crimes.

Collazo next maintains that the verdict was against the weight of the evidence. He claims the evidence that would purportedly implicate him as the perpetrator "was so tenuous and contradicted by direct physical evidence taken from the scene such that his conviction should be overturned as being against the weight of the evidence[.]" Collazo's Br. at 15.

We review the trial court's rejection of a weight claim for an abuse of discretion. **Commonwealth v. Clay**, 64 A.3d 1049, 1054 (Pa. 2013). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Antidormi**, 84 A.3d 736, 749 (Pa.Super. 2014) (citation omitted). Additionally, "[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, [this Court] will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that

the verdict is against the weight of the evidence." **Clay**, 64 A.3d at 1055

(quoting **Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000))

(citations omitted). A trial judge should grant a new trial based on a weight

claim only where "the evidence [is] so tenuous, vague and uncertain that the

verdict shocks the conscience of the court." **Commonwealth v. Bozic**, 997

A.2d 1211, 1223 (Pa.Super. 2010) (quoting **Commonwealth v. Manley**, 985

A.2d 256, 262 (Pa.Super. 2009) (internal citations omitted)).

Here, the trial court rejected Collazo's weight claim:

> From the evidence recounted above, it is reasonable to have concluded that [Collazo] was the individual who entered/broke into the premises located at 806 Hamilton Street, Allentown, Lehigh County, without permission or authority to enter with the intent to commit a crime. It is also reasonable to have concluded that [Collazo] was the person who took Mr. Elzalabany's property with the intent to deprive him of his property. Accordingly, [Collazo's] challenge to the weight of the evidence must fail.

Tr. Ct. Op. at 10.

The trial court did not abuse its discretion when it rejected Collazo's

weight claim. The evidence was not tenuous, vague or uncertain. The claim

lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/16/2024