J-S44039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
TIMOTHY J. SHERFIELD :
:
Appellant : No. 304 EDA 2024

Appeal from the Judgment of Sentence Entered September 7, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005453-2019

BEFORE: NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED APRIL 15, 2025**

Timothy J. Sherfield ("Sherfield") appeals from the judgment of sentence imposed following his jury convictions of third-degree murder, conspiracy to commit third-degree murder, and criminal use of a communication facility.[1]  We affirm.

On April 11, 2019, Sherfield, James MacGregor ("MacGregor"), and Dayanna Broadus ("Broadus") were walking northbound on Benner Street in Philadelphia, when an unknown individual fired a gun in their direction. Sherfield, MacGregor, and Broadus fled from the scene of the shooting.  No one in Sherfield's group sustained an injury, but a bullet struck a bystander, who died from his injuries.

_____

[1] 18 Pa.C.S.A. §§ 2502(c), 903, 7512(a).

Sherfield, MacGregor, Broadus, and Sherfield's cousin, Rahmiek Wilford ("Wilford"), met minutes later and attempted to determine who was responsible for the shooting. Ultimately, Sherfield spoke to someone who led him to believe that individuals from nearby Anchor Street were responsible for the shooting.

The trial court summarized MacGregor's trial testimony as to the subsequent events:

> [MacGregor] testified that he got into [Wilford's] car. [Sherfield] instructed . . . MacGregor and [Wilford to] stay together and wait for his instruction. At this time, [Wilford was] following [Sherfield] down Torresdale Avenue waiting for the call. [Sherfield] eventually called [Wilford], who handed the phone to . . . MacGregor. As they continued down Torresdale Avenue past [a] mini market, [Sherfield] explained that he wanted . . . MacGregor to kill two people [who were inside the mini market and who Sherfield believed to be involved in the shooting].
>
> Soon after, the group went back to a house on Sanger Street. . . . MacGregor told the jury that he was crying, begging [Sherfield] not to make him [kill the two individuals. Sherfield] insisted. In fact, [Sherfield] threatened . . . MacGregor with a handgun pointed at him, telling him if he [did] not kill the two people in the mini market, [Sherfield] was going to kill him. [Sherfield] additionally threatened to have . . . MacGregor's girlfriend raped. At this point, [Sherfield] hand[ed MacGregor] a pair of red gloves, a camouflage mask, a t-shirt, a black jacket, and a dark pair of pants. They made their way out of the house. [Sherfield] handed . . . MacGregor a black iPhone. [Sherfield] instructed . . . MacGregor to [retrieve the handgun with which Sherfield had previously threatened MacGregor from inside the Sanger Street] house.

Trial Court Opinion, 6/10/24, at 4.

Sherfield, Broadus, and Wilford then drove to the mini market, while MacGregor walked there on foot. MacGregor waited in an alley near the

- 2 -

market for two minutes and then started to walk away because he did not want to participate in a murder. At that point, Sherfield called MacGregor and asked what he "was doing." N.T., 6/22/22, at 24. Moments later, Sherfield drove into the alley and informed MacGregor that the individuals from Anchor Street were in the market and Sherfield "wanted [MacGregor] to fire five rounds at them." *Id*. at 25. Sherfield told MacGregor "to make sure that [he] kill[ed] both of the people, and [not] let anyone come out of the store." *Id*.

MacGregor exited the alley and walked into a restaurant next door to the mini market. Sherfield called MacGregor and stated, "No, stupid, the wrong store. They're in the other store, stupid." *Id*. at 31. MacGregor then entered the mini market and shot at individuals inside the store, striking Izeem Hunter ("Hunter") nine times. Hunter died from his injuries.

After the shooting, MacGregor ran to Wilford's vehicle and gave Wilford the gun. When MacGregor met with Sherfield and Broadus later that day, Sherfield informed MacGregor that he "did a good job," returned his clothes to him, and gave him money to buy marijuana for Broadus. *Id*. at 34-35. MacGregor testified that he participated in the murder "[s]olely because [he] was scared that . . . Sherfield was [going to] kill [him]." *Id*. at 32.

The following day, Philadelphia police officers arrested Sherfield after a high-speed vehicle chase. The Commonwealth charged Sherfield with murder, conspiracy to commit murder, criminal use of a communication facility,

recklessly endangering another person, and possession of an instrument of crime.[2]

In addition to his narration of the events on April 11, 2019, MacGregor testified at trial that: (1) he pleaded guilty to third-degree murder, conspiracy to commit murder, and the attempted murder of the other individual in the store, pursuant to a cooperation agreement with the Commonwealth; (2) he was awaiting sentencing at the time of Sherfield's trial; and (3) the Commonwealth did not promise him anything in exchange for his testimony. MacGregor also testified regarding three letters Sherfield, who was in the same detention facility, personally delivered to him. In the letters, Sherfield urged MacGregor to stop cooperating with police and prosecutors and recant the statements he had made to authorities.

The Commonwealth also presented the testimony of Broadus, whose testimony was consistent with MacGregor's account. Broadus testified, *inter*

---

[2] The Commonwealth also charged Sherfield with fleeing or eluding police, 75 Pa.C.S.A. § 3733(a), and related crimes at CP-51-CR-0005454-2019 ("5454-19"), related to his attempts to evade capture on April 12, 2019. The trial court consolidated 5454-19 with the instant matter, and the jury convicted Sherfield of fleeing or eluding police. The trial court imposed a sentence of eighteen to thirty-six months' imprisonment for fleeing or eluding police consecutive to the sentence imposed in the instant matter.

Sherfield filed a notice of appeal at 5454-19 on the same date that he filed his appeal in the instant matter, and the two appeals were listed consecutively before this panel. However, this panel concluded that we lacked jurisdiction to entertain his appeal at 5454-19, because he did not file a timely post-sentence motion that would have extended his appeal deadline. Therefore, we quashed that appeal. **See Commonwealth v. Sherfield**, 305 EDA 2024 (Pa Super. filed Jan. 23, 2025) (unpublished memorandum).

*alia*, that: (1) Sherfield was "on a rampage" after the first shooting and "was intentionally trying to target the people who he thought [were] shooting at him earlier;" and (2) Sherfield informed MacGregor by telephone that he entered the restaurant by mistake and needed to go to the mini market next door. N.T., 6/24/22, at 67-74. Broadus also testified that she and MacGregor sold drugs for Sherfield, and that Sherfield provided MacGregor a place to stay when he was homeless.

Additionally, the Commonwealth presented surveillance video depicting the exterior and interior of the mini market, which showed: (1) MacGregor waiting in the alley next to the market, and Sherfield driving into the alley to speak with MacGregor; (2) Sherfield and Broadus independently entering the market and returning to Sherfield's vehicle; (3) Sherfield and Broadus remaining in Sherfield's vehicle while the shooting occurred; and (4) MacGregor entering the store and shooting Hunter. The Commonwealth also presented records documenting calls between the phones Sherfield and MacGregor used in the moments before the shooting of Hunter.

Sherfield testified in his defense. He stated he knew MacGregor somewhat from the neighborhood and was aware that MacGregor had issues with others in the neighborhood. However, Sherfield said he chose to stay out of those disputes and advised MacGregor to "[s]top hanging in" the area where that other group frequented. N.T., 6/24/22, at 161. Sherfield admitted he was present in the mini market surveillance video footage, but stated that he was only there by chance, because he was waiting to meet someone named

DeShawn. Sherfield denied knowing who Hunter was or that MacGregor would shoot Hunter.

Sherfield acknowledged he wrote letters to MacGregor while they were awaiting trial but stated that he only advised MacGregor to recant because his account of the shooting was untrue. When asked about the cell-phone records that the Commonwealth attributed to him and MacGregor, Sherfield stated that his cousin, Wilford, was in possession of those phones at the time of the shooting.

The jury convicted Sherfield of third-degree murder, conspiracy to commit third-degree murder, and criminal use of a communication facility. On September 7, 2023, the trial court imposed consecutive sentences of twenty to forty years for third-degree murder, ten to twenty years for conspiracy, and eighteen to thirty-six months for criminal use of a communication facility. The sentences for third-degree murder and criminal use of a communication facility fell within the standard range of the sentencing guidelines, while the conspiracy sentence was within the aggravated range. The aggregate sentence imposed by the trial court was thirty-one and one-half to sixty-three years' imprisonment.

On the same date of his sentencing, Sherfield filed a timely post-sentence motion, in which he argued that the verdict was against the weight of the evidence and his sentence was excessive. While the post-sentence motion remained pending, Sherfield filed a motion for leave to file a supplemental post-sentence motion. In the attached supplemental post-

sentence motion, Sherfield expanded on his prior claims and added an argument that the trial court should grant a new trial based on after-discovered evidence, namely the sentence that another jurist imposed on MacGregor for his role in the murder of Hunter.[3]

On January 8, 2024, the trial court noted on its docket the denial of Sherfield's post-sentence motion by operation of law. **See** Pa.R.Crim.P. 720(B)(3) (providing that, if trial court fails to rule on a post-sentence motion, including any supplemental motion, within 120 days, a post-sentence motion shall be deemed denied by operation of law). Four days after this notation, the trial court entered an order granting Sherfield's motion for leave to file his supplemental post-sentence motion as of November 27, 2023.[4] Sherfield then

_____

[3] MacGregor's sentencing occurred the month after Sherfield's jury trial.

[4] Pursuant to Rule 720, a "defendant may file a supplemental post-sentence motion in the judge's discretion as long as the decision on the supplemental motion can be made in compliance with the [120-day] time limit[]" set forth in the Rule. Pa.R.Crim.P. 720(B)(1)(b). Sherfield filed his supplemental motion within the 120-day period and prior to the trial court's ruling on his initial motion. While the trial court did not exercise its discretion to permit the supplemental motion until after the denial of the post-sentence motion by operation of law, we nevertheless conclude that Sherfield preserved, for appeal, the arguments presented in his supplemental post-trial motion. **See** Pa.R.Crim.P. 607(A) (providing that defendant must raise weight-of-the-evidence claim prior to or at sentencing or in post-sentence motion); **see also** Pa.R.Crim.P. 720(C) (stating that defendant must raise after-discovered evidence claim in post-sentence motion "promptly after such discovery"); **Commonwealth v. Clary**, 226 A.3d 571, 579 (Pa. Super. 2020) (stating that defendant must preserve discretionary aspects of sentencing challenge at the sentencing hearing or in a post-sentence motion).

filed a timely notice of appeal. Both Sherfield and the trial court complied with

Pa.R.A.P. 1925.

Sherfield presents the following issues for our review:

[1.] Should [Sherfield's c]onspiracy conviction be vacated and should [Sherfield] be awarded a new trial on all other charges because the Commonwealth's theory of the case and the evidence elicited indicated that . . . MacGregor was not a coconspirator or accomplice with [Sherfield] but acted under duress/coercion and this means that there is insufficient evidence to sustain the [c]onspiracy conviction but, in addition, all other convictions, including third-degree murder, are tainted because the jury was improperly instructed on conspiracy and accomplice liability when this was never alleged much less proven beyond a reasonable doubt?

2. Is [Sherfield's] conviction against the weight of the evidence because, contrary to . . . MacGregor's false testimony, there was no telephonic communication between . . . MacGregor and [Sherfield] immediately prior to MacGregor shooting [Hunter] and the jury was not fully informed of the benefits MacGregor received from cooperating?

3. Should [Sherfield] be awarded a new trial because there exists after-discovered evidence in relation to the favorable sentence of . . . MacGregor[] to [twelve] to [thirty] years incarceration . . . the lead trial [prosecutor] in [Sherfield's] case admitted that she made a conscious and strategic decision to limit apparent cooperation between herself and . . . MacGregor, the lead trial [prosecutor] also asked . . . MacGregor if the Commonwealth offered anything and purposefully elicited a negative response, this was intended to and did mislead the jury, there is always an at least tacit agreement for favor from the Commonwealth, and . . . MacGregor received [twelve] to [thirty] years for what is in every reasonable sense first-degree [m]urder?

[4.] Did the sentencing court abuse its discretion in sentencing [Sherfield] to an aggregate sentence of [thirty-three] to [sixty-six] years incarceration, which is an effective life sentence without justification, and the sentencing court

- 8 -

deviated from the sentencing norms with no consideration of appropriate retribution or rehabilitation because [Sherfield] would be at least [sixty] at his minimum date and at least [ninety-three] at his maximum date and [Sherfield] comes from a broken home, [Sherfield] suffers from [attention deficit hyperactivity disorder] for which he was medicated, [Sherfield] suffers from intellectual deficits, [Sherfield] has a history of drug usage, [Sherfield] is paranoid and suffers from psychotic disorder and requires medication to be competent?

Sherfield's Brief at 5 (reordered for ease of disposition).

In his first issue, Sherfield challenges the sufficiency of the evidence with respect to his conviction of conspiracy to commit third-degree murder.

Our review of a sufficiency claim is well settled:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

***Commonwealth v. Scott***, 325 A.3d 844, 849 (Pa. Super. 2024) (citation and brackets omitted, and italicization added).

To sustain a conviction for criminal conspiracy, "the Commonwealth must establish that the defendant (1) entered into an agreement to commit

- 9 -

or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Fisher***, 80 A.3d 1186, 1190 (Pa. 2013) (citation omitted); ***see also*** 18 Pa.C.S.A. § 903.  A conspiracy to commit third-degree murder requires proof that the defendant entered into an agreement to kill another with malice aforethought.  ***See id***. at 1191.

"The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished." ***Commonwealth v. Gross***, 232 A.3d 819, 839 (Pa. Super. 2020) (*en banc*) (citation omitted).  "[O]nce the trier of fact finds that there was an agreement and the [defendant] intentionally entered into the agreement, [the defendant] may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." ***Commonwealth v. Reed***, 216 A.3d 1114, 1122 (Pa. Super. 2019) (citation omitted).

Sherfield premises his sufficiency claim on the duress defense.  "The elements which must be shown to establish a duress defense are: (1) an immediate or imminent threat of death or serious bodily injury; (2) a well[-]grounded or reasonable fear that the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm except by committing the criminal act." ***Commonwealth v. Bozic***, 997 A.2d 1211, 1224 n.5 (Pa. Super. 2010) (citation omitted); ***see also*** 18 Pa.C.S.A. § 309(a) (defining duress defense).

- 10 -

Sherfield asserts that the Commonwealth's "entire theory of the case was that MacGregor acted under duress because [Sherfield] threatened to kill MacGregor and rape his girlfriend if MacGregor did not kill" Hunter. Sherfield's Brief at 28. Sherfield argues that, because a conspiracy requires a "willing agreement to act in concert" and MacGregor's uncontroverted testimony showed that he did not willingly kill Hunter, the evidence was insufficient as to his conspiracy conviction. *Id*. at 26, 29 (stating, "Conspiracy does not occur when the entire case is based upon duress, intimidation, and coercion").

First, we reject Sherfield's invocation, on appeal, of a duress defense. The defense of duress lies not with the party who makes the threats — here, Sherfield — but rather with the threatened party — in this case, MacGregor. *See* 18 Pa.C.S.A. § 309(a) (providing that "the actor [who] was coerced to" engage in criminal conduct by threats of or use of force may raise a duress defense). By entering a guilty plea to third-degree murder, conspiracy, and related charges, MacGregor mooted any consideration of whether he could have availed himself of a successful duress defense.

In any event, based upon our review, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Sherfield committed the conspiracy offense. *See Scott*, 325 A.3d at 849. Sherfield cites no authority — and we are aware of none — supporting his claim that because one party was forced to participate in a conspiracy under duress, the other parties to a conspiracy cannot be found to have entered into an agreement to commit a criminal act. Our focus in this sufficiency analysis is whether the

- 11 -

*defendant* "intentionally entered into" an agreement with others, not the culpability or mental state of the other parties to the conspiracy. **Reed**, 216 A.3d at 1122.

Here, the Commonwealth presented substantial evidence showing that Sherfield acted in concert with MacGregor, Wilford, and Broadus in planning and committing a retaliatory shooting on April 11, 2019. This evidence included MacGregor's and Broadus' account of the events leading up to the shooting at the mini market, as well as corroborative cell-phone records and surveillance video. The jury was free to infer from the evidence that Sherfield entered into a criminal agreement with these individuals to kill Hunter and did so with malice aforethought. **See Fisher**, 80 A.3d at 1190-91. Moreover, the evidence showed that numerous overt acts were committed in furtherance of the conspiracy, including MacGregor's shooting of Hunter. **See Reed**, 216 A.3d at 1122 (providing that the defendant need not have committed an overt act in furtherance of the conspiracy). Therefore, the evidence was sufficient to prove the conspiracy offense. No relief is due on his first appellate issue.[5]

_____

[5] Sherfield also argued that his remaining convictions were "tainted because the jury was improperly instructed on conspiracy and accomplice liability when this was never alleged much less proven beyond a reasonable doubt." Sherfield's Brief at 27. He cites no law to support his claim, and he does not specifically identify any deficiencies in the jury instructions aside from the conclusory claim that they were "tainted." **Id**. In light of Sherfield's failure to meaningfully develop his jury instruction claim, we find his argument waived. **See Commonwealth v. Spotz**, 18 A.3d 244, 281 n.21 (Pa. 2011) (finding one-sentence, unsupported argument waived).

In his second issue, Sherfield argues that the trial court abused its discretion in denying his claim that the verdict was against the weight of the evidence. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses." *Commonwealth v. Clemens*, 242 A.3d 659, 667 (Pa. Super. 2020) (citation omitted). For an appellant to prevail on a challenge to the weight of the evidence, the evidence must be "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021) (citation omitted).

"Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence." *Id*.

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Wright*, 314 A.3d 515, 524 (Pa. Super. 2024) (citation omitted).

- 13 -

Sherfield argues that the verdict was against the weight of the evidence, where the Commonwealth's evidence showed that he and MacGregor did not have a phone conversation directly prior to Hunter's shooting. Sherfield contends that the absence of a phone conversation just prior to the killing undermined MacGregor's claim that Sherfield intimidated him and coordinated the killing.

Sherfield further argues that the trial court should have considered MacGregor's receipt of a twelve-to-thirty-year sentence for his role in Hunter's murder. Sherfield avers that the trial court should have "wholly discredited" MacGregor's testimony, where the Commonwealth "purposefully denied [the jury] the opportunity to assess the benefits of MacGregor's motive for cooperation." Sherfield's Brief at 19.

The trial court rejected Sherfield's weight-of-the-evidence claim, finding that the verdict did not shock its conscience. The court stated that the Commonwealth provided "consistent, corroborated evidence" demonstrating Sherfield's role in the killing of Hunter. Trial Court Opinion, 6/10/24, at 15. The court noted that "the jury was free to believe that there was a telephonic communication between . . . MacGregor and [Sherfield] immediately prior to the shooting." **Id**.

Based on our review, we discern no abuse of discretion by the trial court in rejecting Sherfield's weight claim. **See Delmonico**, 251 A.3d at 837. Initially, we observe that the record belies Sherfield's claim that there was no evidence he spoke with MacGregor immediately prior to the shooting of

- 14 -

Hunter. Philadelphia Police Detective Thorsten Lucke ("Detective Lucke") testified that there was a one minute and thirty-five second conversation between Sherfield's and MacGregor's phones, beginning at 4:39 p.m. on April 11, 2019. *See* N.T., 6/24/22, at 34-35, 41-42, 44, 48. Comparing this conversation to the surveillance video from the mini market, Detective Lucke determined that the conversation began when MacGregor was in the alley and terminated as he was walking into the mini market. *See id*. at 130-36. Thus, Detective Lucke explained that "[t]he connection [between the phones] ended seconds before the shooting." *Id*. at 136. Detective Lucke's testimony is consistent with MacGregor's testimony that he waited in the alley until he received a call from Sherfield ordering him to perform the killing and ended his conversation with Sherfield as he entered the mini market. *See* N.T., 6/21/22, at 24-31. The jury was free to infer from this evidence that Sherfield directed and coordinated MacGregor's shooting of Hunter. *See Clemens*, 242 A.3d at 667.

Furthermore, to the extent Sherfield suggests that the trial court abused its discretion by not considering MacGregor's twelve-to-thirty-year sentence, he cites no law — and we are aware of none — that would require that a trial court consider evidence not before the jury when ruling on a weight-of-the-evidence claim. We reject Sherfield's attempt to graft his after-discovered evidence claim onto the weight-of-the-evidence analysis.

Here, the jury had the exclusive province to believe all, part, or none of the evidence presented, and to make credibility determinations regarding the

testimony at trial, including MacGregor's testimony regarding his own and Sherfield's roles in the murder of Hunter. *See id*. As the trial court noted, the Commonwealth presented ample evidence to corroborate MacGregor's testimony, including Broadus' account of the shooting, cell-phone records, and surveillance video. Because the trial court had the opportunity to hear and see the evidence presented, this Court gives the gravest consideration to the trial court's findings and reasons when reviewing its determination regarding the weight of the evidence. *See Wright*, 314 A.3d at 524. We decline to disturb the court's determination that the verdict did not shock its sense of justice. Accordingly, no relief is due on Sherfield's second issue.

In his third issue, MacGregor argues that the trial court erred by denying his request for a new trial based on the alleged after-discovered evidence of the twelve-to-thirty-year sentence imposed upon MacGregor the month after Sherfield's trial. We review a trial court's ruling on an after-discovered evidence claim for an abuse of discretion. *See Commonwealth v. Felder*, 247 A.3d 14, 18 (Pa. Super. 2021).

To obtain a new trial based on after-discovered evidence, a defendant must demonstrate by a preponderance of the evidence that the evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Id*. at 17 (citation omitted). "The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Id*. (citation omitted).

Sherfield argues that MacGregor's twelve-to-thirty-year sentence reveals that the Commonwealth intentionally misled the jury regarding MacGregor's cooperation at Sherfield's trial. Sherfield contends that MacGregor's receipt of such a lenient sentence contradicted his testimony that the Commonwealth did not offer him anything in exchange for his testimony at Sherfield's trial.

In its Rule 1925(a) opinion, the trial court concluded that MacGregor's sentence did not constitute after-discovered evidence, where the parties had fully explored, at trial, MacGregor's guilty plea, the cooperation agreement, and the range of sentences he could receive. The court further found that the jury's knowledge of MacGregor's sentence at a new trial would not have led to a new verdict.

Based on our review, we discern no abuse of discretion in the trial court's determination with respect to Sherfield's after-discovered evidence claim. *See Felder*, 247 A.3d at 18. First, as the trial court recognized, MacGregor's sentencing was not "evidence" that MacGregor's cooperation agreement with the Commonwealth was anything other than what was discussed during his trial testimony. MacGregor admitted at trial that he pleaded guilty to third-degree murder — and avoided a first-degree murder conviction and mandatory life without parole sentence — in exchange for his truthful

- 17 -

testimony at Sherfield's trial. *See* N.T., 6/22/22, at 7-8, 47-52; *see also* N.T., 6/27/22, at 19 (prosecutor arguing during closing arguments that MacGregor committed an act of first-degree murder and "after cooperating with authorities, was allowed to plead to third-degree murder"). MacGregor acknowledged that, because his plea was open, he had no expectation that he would receive any specific sentence. *See* N.T., 6/22/22, at 51-52. The fact that MacGregor received a twelve-to-thirty-year sentence was entirely consistent with the disclosed agreement and does not show that the Commonwealth misled the jury regarding the nature of the agreement. *See Commonwealth v. Griffin*, 137 A.3d 605, 608-09 (Pa. Super. 2016) (stating that bald allegations of misconduct cannot constitute after-discovered evidence).

Second, even to the extent MacGregor's sentence qualified as after-discovered evidence, Sherfield has identified no use or purpose for the evidence beyond impeachment of MacGregor's credibility. *See Felder*, 247 A.3d at 17. Finally, the trial court did not abuse its discretion in finding that a new jury's knowledge of MacGregor's sentence would not result in a different verdict. *See id*. Sherfield established on cross-examination of MacGregor that he could not rule out receiving a sentence of as little as seven-and-one-half to fifteen years' imprisonment. *See* N.T., 6/22/22, at 52. The fact that MacGregor received a greater sentence would not have altered the jury's consideration of his testimony. Sherfield's third issue merits no relief.

In his final issue, Sherfield presents a challenge to the discretionary aspects of his sentence. A challenge to the sentencing court's discretion is not appealable as of right. *See Commonwealth v. Akhmedov*, 216 A.3d 307, 328 (Pa. Super. 2019) (*en banc*).

> Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence;" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*. (citation and brackets omitted).

In the instant case, Sherfield filed a timely post-sentence motion, a timely notice of appeal, and included a Rule 2119(f) statement in his brief. We therefore must examine the Rule 2119(f) statement to determine whether he has raised a substantial question meriting our review. *See id*. A substantial question is present where the appellant advances an argument that the sentence was inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *See id*. "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.* (citation omitted).

In his Rule 2119(f) statement, Sherfield asserts that the trial court: (1) imposed an aggravated-range sentence without any consideration of

mitigating factors; and (2) focused solely on the gravity of his crimes and failed to consider his potential for rehabilitation. These claims raise a substantial question. *See Commonwealth v. Mulkin*, 228 A.3d 913, 916 (Pa. Super. 2020) (stating that claim that court imposed aggravated-range sentence without considering mitigating factors raises substantial question); *see also Commonwealth v. Derrickson*, 242 A.3d 667, 680 (Pa. Super. 2020) (holding claim that sentencing court considered only seriousness of offense and no other relevant factors presents substantial question). Therefore, we proceed to address the merits of Sherfield's discretionary sentencing issue.

We consider the standard of review for a discretionary sentencing claim:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Taylor*, 277 A.3d 577, 592-93 (Pa. Super. 2022) (citation omitted).

Section 9721(b) of the Sentencing Code[6] sets forth the factors the sentencing court must consider when imposing a sentence:

> [T]he sentence imposed should call for total confinement that is consistent with . . . the protection of the public, the gravity of the

---

[6] *See* 42 Pa.C.S.A. §§ 9701-9799.75.

offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing. . . .

42 Pa.C.S.A. § 9721(b).

The balancing of the sentencing factors is the sole province of the sentencing court. Further, we recognize that the sentencing court, which is present at the hearing and observes all witnesses and the defendant firsthand, is in a superior position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime. Notably, where a sentencing court is informed by a [pre-sentence investigation report ("PSI")], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.

In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the PSI; thus properly considering and weighing all relevant factors.

*Commonwealth v. Miller*, 275 A.3d 530, 535 (Pa. Super. 2022) (citations, quotations marks, and brackets omitted).

Sherfield argues that the trial court solely focused on retribution when imposing the sentence and ignored his potential for rehabilitation and history of mental health, family, and drug issues. He contends that the imposition of "non-guideline, consecutive sentences" resulted in a *de facto* life sentence of

thirty-one and one-half to sixty-three years' imprisonment.[7]   Sherfield's Brief at 15.

At sentencing, the trial court considered argument from counsel, testimony from members of Hunter's family, and Sherfield's allocution.  **See** N.T., 9/7/23, at 12-39.  The court noted that it reviewed the PSI, a mental health report, the evidence presented at trial, the sentencing guidelines, and the Commonwealth's sentencing memorandum.  **See id**. at 16-17, 40-41.  The court stated that it considered Sherfield's failure to cooperate in the preparation of the PSI.  **See id**. at 40.  The court additionally indicated that it weighed the mitigating factors in Sherfield's history when determining his sentence.  **See id**.

The trial court imposed sentences in the standard guideline range for third-degree murder and criminal use of a communication facility and in the aggravated range for conspiracy.  **See id**. at 40-41.  The court explained its reasoning for the aggravated-range sentence: (1) the conspiracy involved a minor — Broadus was seventeen years old at the time of the incident; and (2) Sherfield wrote letters to MacGregor requesting that he not cooperate with authorities.  **See id**. at 41.

---

[7] Sherfield argues that this Court should consider the aggregate sentence of thirty-three to sixty-six years' imprisonment, which also includes the consecutive sentence of eighteen to thirty-six months' imprisonment imposed at 5454-19.  In light of our quashal of Sherfield's appeal at 5454-19, we confine our review to the sentence imposed in the instant matter.  **See** n.2, **supra**.

In its Rule 1925(a) opinion, the court stated that it considered Sherfield's personal characteristics and rehabilitative needs as reflected in the PSI. *See* Trial Court Opinion, 6/10/24, at 12-13. The court stated that the sentence imposed reflected Sherfield's background as well as the severity of his crimes. *See id*. at 13.

Upon review, we conclude that the trial court did not abuse its discretion when imposing its sentence. *See Taylor*, 277 A.3d at 592-93. As noted above, it was solely within the province of the trial court to weigh the evidence and balance the sentencing factors. *See Miller*, 275 A.3d at 535. The court's review of the PSI reflects that it was aware of all appropriate sentencing factors and Sherfield's background. *See id*. Moreover, the court stated on the record at the record at the sentencing hearing that it considered the mitigating factors discussed in the PSI when imposing the sentence. *See* N.T., 9/7/23, at 40.

We further observe that the trial court set forth its rationale for imposing an aggravated-range sentence for conspiracy on the record. *See Commonwealth v. Salter*, 290 A.3d 741, 749 (Pa. Super. 2023) (stating that sentencing court may consider any legal factor when imposing a sentence in aggravated range). The court's decision to run Sherfield's sentences consecutively rather than concurrently was not an abuse of discretion. *See Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014) (stating that the decision to impose consecutive rather than concurrent sentences lies within the sound discretion of the trial court). Finally, we reject Sherfield's

claim that his sentence was a *de facto* life sentence, as the record reflects that he would be in his early sixties at his minimum release date. ***See Commonwealth v. Anderson***, 224 A.3d 40, 47 (Pa. Super. 2019) (concluding that defendant did not receive a *de facto* life sentence where he would be eligible for parole at sixty-seven). Sherfield's final issue merits no relief.

Having found no merit to any of Sherfield's appellate issues, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/15/2025